1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11
12
13
14
15
16
17

| | |
|---|---|
| JOSE DIAZ HERMOSILLO, et al.,<br><br>       Plaintiffs,<br><br>   v.<br><br>DAVEY TREE SURGERY COMPANY, et al.,<br><br>       Defendants. | Case No. 18-CV-00393-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**<br><br>Re: Dkt. No. 16 |

18
19
20
21
22
23
24
25
26
27
28

Plaintiffs Jose Diaz Hermosillo ("Jose") and Oscar Diaz Hermosillo ("Oscar") (collectively, "Plaintiffs") brought a putative class action against Defendants Davey Tree Surgery Company and The Davey Tree Expert Company (collectively, "Defendants") in Santa Clara Superior Court. ECF No. 1 at 13. Plaintiffs assert seven causes of action related to wage and hour violations, including a Private Attorneys General Act ("PAGA") cause of action. *Id.* at 24-36. Defendants removed this case to federal court. *Id.* at 1. Before the Court is Defendants' motion to compel arbitration of all causes of action except the PAGA cause of action and to stay proceedings of the PAGA cause of action. ECF No. 16. Having considered the parties' submissions, the relevant law, and the record in this case, the motion to compel arbitration and to stay proceedings

1

is hereby GRANTED IN PART and DENIED IN PART.

I.   BACKGROUND

A.   Factual Background

Defendants are Ohio corporations that perform "professional tree services on public works projects in Santa Clara County."  ECF No. 1 at 15 ¶¶ 4-5.  Plaintiffs were employed by Defendants as Tree Trimmers from approximately October 2015 until approximately August 2017.  *Id.* at 17 ¶¶ 15-16.  Plaintiffs seek to bring a class action on behalf of "[a]ll non-exempt Tree Trimmers employees (including but not limited to those holding the job titles of 'laborer,' 'groundman,' 'apprentice climber,' 'climber,' 'climbing arborist,' 'climbing arborist trainee,' and 'trimmer') who were employed by Defendants in the State of California any time during the four years preceding the filing of this Complaint through to the present" for various alleged wage and hour violations.  *Id.* at 19-20 ¶¶ 29, 25-36.

1.   The Employment Applications

Plaintiffs submitted employment applications to The Davey Tree Expert Company in September 2015.[1]  Plaintiffs signed the applications on September 16, 2015 and The Davey Tree Expert Company received the applications on September 18, 2015.  *See* ECF No. 16-1 at 2-3; ECF No. 16-2 at 2-3; ECF No. 26.  The applications both contain the following language above the signature line:

**IMPORTANT**
**PLEASE READ BEFORE SIGNING**

My signature constitutes my certification that my responses are true and complete and that I have read and understood this paragraph.  Where an item is left blank, it is because there is no information within its scope.  My signature further constitutes my authorization for The Davey Tree Expert Company and Subsidiaries ("Davey") to investigate the facts submitted and for those with relevant information, including but without limitation, physicians, hospitals, schools, law enforcement agencies and my prior employers, to provide such information to Davey, and I release them from any liability for doing so.  If

---

[1] Plaintiff's evidentiary objections, ECF No. 24-4 and ECF No. 28, are OVERRULED.

United States District Court
Northern District of California

requested by Davey to do so, I agree to submit to a search of any compartment that may be assigned to me, and I hereby waive all claims for damages on account of such examination. I hereby consent to undergo such medical examination and pre-employment drug test as Davey may require. I also understand and agree that I may be required to take a medical examination after I have received an offer of employment and that such offer of employment may be made contingent upon my satisfactory completion of the medical examination. I further understand and agree that I may be required, as a condition of hiring and continued employment, to pass any pre-employment drug test which Davey may ask me to take. I understand and agree that any falsification or omission either on this form or in my responses to questions asked during the interviewing or examination process or on employment forms I may subsequently complete, including "I-9" forms, shall be grounds for immediate termination of employment, no matter when the falsification or omission is discovered. I understand and agree that Davey may change wages, benefits, working conditions, and policies at any time. I also understand that, if hired, my employment will be "at will" and that either my employer or I may terminate my employment at any time, with or without cause. I understand that I may not rely on any representations or promises to the contrary which may be made by any representative of Davey. Any claims made by me against Davey relating to any aspect of my employment, including but not limited to hiring and termination, must be brought within six (6) months of the occurrence of the event giving rise to the claim(s). In addition, <u>all claims</u> related to my employment will be resolved through arbitration pursuant to the Federal Arbitration Act and under the rules of the American Arbitration Association. Davey will pay the fees charged by the arbitrator.

ECF No. 16-1 at 3; ECF No. 16-2 at 3.

Plaintiffs submit declarations in Spanish in which they state that their native language is Spanish and that they are "unable to speak, read or write in the English language at any level that [they] would consider basic speaking ability or literacy." ECF No. 24-2 ¶ 2; ECF No. 24-3 ¶ 2. Plaintiffs state that "Davey had an application that it drafted and presented to [them] to fill out. The application was only provided in English. No one at Davey assisted [them] in filling out the application or explained its contents." ECF No. 24-2 ¶ 4; ECF No. 24-3 ¶ 4. Plaintiffs explain that they were able to fill out the applications notwithstanding their limited English abilities based on their familiarity with such basic words as "name" and "address." *Id.* Plaintiffs state that there was no negotiation over the wording of the application and that the expectation was that they would immediately fill out and sign the applications to be considered for hire. *Id.*

### 2. The Arbitration Agreement

Defendants contend that Plaintiffs were also given a copy of Defendants' standalone Arbitration Agreement, ECF No. 26-3 ("Arbitration Agreement"), during their new employee orientation. Specifically, Defendants submit a declaration from Michael Barton, who was the Assistant District Manager in the Santa Clara office of The Davey Tree Expert Company at the time when Plaintiffs were hired. ECF No. 22 ¶ 2. Barton states that he "conducted the new employee orientation for Jose and Oscar Hermosillo, as well as for other new employees in Santa Clara." *Id.* ¶ 3. Barton goes on: "When I conducted new employee orientation, I provided new employees copies of various Company policies, including the employee handbook and arbitration agreement. I also gave new employees a general overview of the Company's policies and handbook." *Id.* Barton adds that "[w]hile Oscar and Jose worked for the Company, extra copies of the handbook and arbitration agreement were available to employees in the Santa Clara office." *Id.* Defendants also submit a declaration by Brent Swan, the current District Manager of The Davey Tree Expert Company. ECF No. 26 ¶ 1. Swan states that Davey's Arbitration Agreement "is given to all new employees during orientation and was again given to employees in my District when the Employee Handbook was revised in December 2016." *Id.* ¶ 6.

The Arbitration Agreement states in bold at the top of the document: "This document affects your rights to a trial by jury and to file a class action. It is a condition of your employment, and is the mandatory procedure for resolution of the disputes described below. Please read it carefully." ECF No. 16-3 at 2. The parties to the Arbitration Agreement are defined as the Davey Tree Expert Company and its subsidiaries and "all nonunion employees of the Company and all applicants for jobs with the Company." *Id.* The Arbitration Agreement provides that employees who were employed after June 6, 2014 express consent to the Arbitration Agreement by "(a) your written agreement to be bound by this Agreement; (b) submitting your application for employment to the Company; (c) accepting employment with the Company; or (d) accepting any wages, salary, promotion, increase, transfer, bonus or other benefit of employment from the Company and (e)

4

you have not opted out as provided for by paragraph B.4." *Id.* Paragraph B.4, in turn, provides

that employees may opt out of the Arbitration Agreement by providing written notice to the Davey

Tree Legal Department within 30 days of receipt of the Employee Handbook. *Id.*

The Arbitration Agreement defines the claims that it covers as including, but not limited

to, claims for: "(a) wages, benefits or other compensation due; (b) breach of any contract or

covenant (express or implied); (c) torts or personal injury; (d) discrimination and/or harassment

. . .; (e) any violation of any federal, state, or other governmental law, statute, regulation, or

ordinance." *Id.* The following claims are expressly excluded from coverage: "(a) claims for

workers' compensation or unemployment compensation benefits; (b) claims under an employee

benefit or pension plan . . .; (c) claims and administrative charges that cannot lawfully be required

to be arbitrated; and (d) claims for temporary injunctive relief, provided, however, that the

Arbitrator . . . will decide all other issues, including the propriety of permanent injunctive relief."

*Id.* at 2-3.

The Arbitration Agreement also contains a class action waiver that requires all claims be

brought individually. In addition, the Arbitration Agreement provides that Defendants "will be

responsible for paying AAA's administrative fees and the fees and costs of the Arbitrator;

provided, however, that if a Covered Employee is the party initiating the claim, the Covered

Employee is responsible for contributing up to $150 toward administrative fees in accordance with

the AAA's employment arbitration procedures." *Id.* at 4. "If a Covered Employee is unable to

pay this amount due to indigency, the Covered Employee must indicate this inability in writing,

and the payment will be deferred until such time as the Arbitrator determines whether the fee

should be waived pursuant to the standards applied for the waiving of filing fees in the federal

courts." *Id.* The Arbitration Agreement also states that it is "the complete Agreement on the

subject of arbitration of disputes . . . . This Agreement supersedes any prior or contemporaneous

oral or written understandings on the subject." *Id.* at 5. At the end of the Arbitration Agreement,

the following statement appears in bold: "You may also wish to consult an attorney regarding the

5

Case No. 18-CV-00393-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION AND TO
STAY PROCEEDINGS

terms of this Agreement." *Id.*

Plaintiffs dispute Defendants' description of their new employee orientation as it relates to the Arbitration Agreement. Specifically, Plaintiffs state in their declarations that their "job orientation consisted of watching a few videos over the course of two to four hours at Davey's work yard with other new hires. The videos focused on climbing techniques and workplace safety." ECF No. 24-2 ¶ 5; ECF No. 24-3 ¶ 5. Plaintiffs state that "[n]o one at Davey explained any employment policies or requirements to [them] during the orientation." *Id.* In response to Barton's declaration, Plaintiffs state that Barton does not speak Spanish and that Barton "never explained Davey's general employment policies or any arbitration agreement to [them] during orientation or otherwise." ECF No. 24-2 ¶ 7; ECF No. 24-3 ¶ 7. Moreover, Plaintiffs state that neither Barton "nor any other Davey employee instructed me that extra copies of any employment-related documents were available to employees at Davey's business office." *Id.* Plaintiffs state that they were unfamiliar with the Arbitration Agreement until their attorney showed it to them in the course of this case. Similarly, Plaintiffs contend that even if they had been provided with the Arbitration Agreement, they would not have been able to understand it because it is in English. *Id.*

Finally, Plaintiffs state that they were surprised to learn that Defendants are arguing that Plaintiffs agreed to arbitration because "[a]t no point during [the] hiring process or orientation did anyone at Davey Tree Company or otherwise inform or explain to [them] that [their] job[s] with Davey Tree Company would be subject to arbitration of claims related to [their] employment." ECF No. 24-2 ¶ 8; ECF No. 24-3 ¶ 8. Plaintiffs further state that "[b]efore this lawsuit was filed, [they] had no knowledge of the arbitration process, its requirements, or the term itself." *Id.* Plaintiffs state that based on their observations during their employment, "other employees also did not receive an explanation of Davey's employment policies or the purported Arbitration Agreement." ECF No. 24-2 ¶ 9; ECF No. 24-3 ¶ 9.

Plaintiffs add that many of Defendants' employees "have very limited ability to speak or

read English" and the "primary language spoken by most employees during [Plaintiffs'] employment was Spanish." *Id.* Plaintiffs state that "[their] observation during [their] employment was that most Spanish-speaking employees . . . received direction from our work crew's team leaders who spoke limited English." ECF No. 24-2 ¶ 6; ECF No. 24-3 ¶ 6.

**B.    Procedural History**

Plaintiffs filed the instant suit in Santa Clara Superior Court on December 7, 2017. ECF No. 1 at 13. Defendants removed the case to federal court on January 18, 2018 pursuant to the Class Action Fairness Act of 2005. *Id.* at 2.

On February 16, 2018, Defendants filed the instant motion to compel arbitration of all causes of action except the PAGA cause of action and to stay the PAGA cause of action. ECF No. 16 ("Mot."). On March 2, 2018, Plaintiffs filed an opposition and various evidentiary objections. ECF No. 24 ("Opp'n"). On March 9, 2018, Defendants filed a reply. ECF No. 25 ("Reply"). Also on March 9, 2018, Defendants filed Swan's declaration in support of the Reply. ECF No. 26. On May 3, 2018, Plaintiffs filed objections to Swan's declaration. ECF No. 28.

On July 9, 2018, Plaintiffs filed a request for judicial notice of new authority pursuant to Civil Local Rule 7-3(d)(2). ECF No. 34. That request is GRANTED.

**II.    LEGAL STANDARD**

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) (quoting 9 U.S.C. § 3).

Interpretation of arbitration agreements generally turns on state law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). However, the United States Supreme Court has stated that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute," and that "[t]he court is to make this determination by

United States District Court
Northern District of California

applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The FAA creates a body of federal substantive law of arbitrability that requires a healthy regard for the federal policy favoring arbitration and preempts state law to the contrary. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-79 (1989) ("[T]he FAA must be resolved with a healthy regard for the federal policy favoring arbitration."). However, "state law is not entirely displaced from federal arbitration analysis." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936-37 (9th Cir. 2001).

In deciding whether a dispute is arbitrable under federal law, a court must answer two questions: (1) whether the parties agreed to arbitrate; and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts generally should apply ordinary state-law principles governing contract formation in deciding whether [an arbitration] agreement exists."). Thus, in determining whether parties have agreed to arbitrate a dispute, the court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). If the party seeking to compel arbitration establishes both factors, the court must compel arbitration. *See Chiron Corp.*, 207 F.3d at 1130. "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the

[FAA] is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

However, the FAA's savings clause "allows courts to refuse to enforce arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting 9 U.S.C. § 2). "The clause 'permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)) (internal quotation marks omitted).

## III. DISCUSSION

In the instant case, Plaintiffs argue that Defendants have not established that Plaintiffs agreed to the Arbitration Agreement. Plaintiffs also argue that the arbitration clause in the employment application is unconscionable and thus unenforceable. The Court addresses these issues in turn.

### A. Whether the Parties Entered a Valid Arbitration Agreement

The Court first addresses whether Plaintiffs and Defendants entered into a valid arbitration agreement. *See Chiron Corp.*, 207 F.3d at 1130. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Norcia v. Samsung Telecommc'ns Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)) (alteration in original). "As the party seeking to compel arbitration, [Defendants] bear[] 'the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Norcia*, 845 F.3d at 1283 (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996))).

The Court first turns to whether the employment application and the Arbitration Agreement should be analyzed as parts of the same agreement or whether they should be analyzed as separate agreements. Defendants contend that when Plaintiffs signed their employment

9

applications, Plaintiffs agreed to submit any employment-related claims to arbitration.  Mot. at 4.

Defendants go on to argue that "[u]nder the terms of the agreement, they also consented to

arbitrate by submitting an employment application, accepting employment, and accepting wages,"

and by failing to opt out of the agreement.  *Id.*  These alternative forms of expressing consent are

only discussed in the Arbitration Agreement, not in the arbitration clause in the employment

application.  It is thus clear that Defendants conflate the arbitration clause in the employment

application with the Arbitration Agreement that Defendants allegedly provide at new employee

orientation.  However, Defendants provide no support for their apparent assumption that the

arbitration clause in the employment application and the Arbitration Agreement are

interchangeable or are parts of the same agreement or that the Arbitration Agreement was

incorporated by reference into the employment application.  "For the terms of another document to

be incorporated into the document executed by the parties the reference must be clear and

unequivocal, the reference must be called to the attention of the other party and he must consent

thereto, and the terms of the incorporated document must be known or easily available to the

contracting parties."  *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 641 (1986);

*see also Perez v. DirecTV Grp. Holdings, LLC*, 251 F. Supp. 3d 1328, 1338 (C.D. Cal. 2017)

(citing same standard for incorporation by reference).  Nothing in the employment application

references a separate arbitration agreement or otherwise suggests that there is another document

that contains additional terms relating to arbitration.

In addition, the Arbitration Agreement explicitly states that it "supersedes any prior . . .

written understandings on the subject" of arbitration, which means that by its own terms the

Arbitration Agreement, if assented to by both parties, supersedes the employment agreement

arbitration clause.  ECF No. 16-3 at 5.

Moreover, the employment application and the Arbitration Agreement contain different

terms, which also suggests that they are two separate agreements.  Specifically, the employment

application contains a clause that requires any claims "relating to any aspect of my employment,

including but not limited to hiring and termination, must be brought within six (6) months of the occurrence of the event giving rise to the claim(s)," whereas the Arbitration Agreement does not have such a limit. *Compare* ECF No. 16-1 at 3; ECF No. 16-2 at 3 *with* ECF No. 16-3. The employment application also requires arbitration of all claims related to employment, while the Arbitration Agreement carves out certain categories of employment-related claims from its scope. *Id.* These inconsistencies support treating the employment application and the Arbitration Agreement as two separate possible agreements.

The Court next analyzes in turn whether either the employment application or the Arbitration Agreement is a valid agreement to arbitrate. The Court analyzes contract formation under California law. *See id.* at 1283-84. "Generally, under California law, 'the essential elements for a contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration.'" *Id.* at 1284 (quoting *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999)) (alterations and internal quotation marks omitted). Whether there is a valid agreement to arbitrate in the instant case turns on the second factor, whether the Plaintiffs consented to (1) the arbitration clause in the employment application and (2) the Arbitration Agreement.

### 1. Employment Application Arbitration Clause

"It is undisputed that under California law, mutual assent is a required element of contract formation." *Knutson*, 771 F.3d at 565. Defendants contend that "[w]hen Plaintiffs signed their employment applications, they both agreed to submit any employment-related claims to arbitration." Mot. at 4. Plaintiffs argue that the employment applications do not satisfy Defendants' burden of establishing a valid agreement to arbitrate because (1) Defendants do not "provide any evidence that the Parties to this lawsuit actually reviewed or agreed to the terms of the arbitration language" in the employment applications, (2) "Defendants did not authenticate the job applications," (3) Defendants do "not provide evidence that the signatures appearing on page two of each document belong to the Plaintiffs," and (4) Defendants did not sign the employment

11

applications. Opp'n at 6. Each of Plaintiffs' arguments fails.

First, contrary to Plaintiffs' assertion, Defendants have provided evidence that Plaintiffs agreed to the arbitration language in the employment applications. Specifically, Defendants submitted copies of Plaintiffs' signed and dated employment applications, both of which contain the arbitration clause. *See* ECF No. 16-1 (Jose's application); ECF No. 16-2 (Oscar's application); ECF No. 26 (Swan declaration stating that the copies of the applications submitted as exhibits are true and correct copies of the original applications, which were preserved in the course of the regularly conducted activities of Defendants). "[O]rdinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing."[2] *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001); *see also Marmolejo v. Fitness Int'l LLC*, 2018 WL 1181240, at *4 (Cal. Ct. App. Mar. 7, 2018) ("As a general rule of contracting, the law assumes a party who signs an agreement has read and understood it."). Accordingly, Plaintiffs' signatures on the employment applications constitute evidence that Plaintiffs agreed to the arbitration clauses in the employment applications.

Plaintiffs also argue that Defendants have failed to authenticate the employment applications or submit evidence that the signatures on the applications are truly Plaintiffs'. These arguments fail, too. With respect to authentication, the California Court of Appeal has stated that "[f]or purposes of a petition to compel arbitration, it is not necessary to follow the normal procedures of document authentication." *Condee v. Longwood Mgmt. Corp.*, 88 Cal. App. 4th 215, 218 (2001). Instead, "[a] party can prove the existence of an arbitration agreement simply by attaching a copy of it to the motion to compel or by including its provisions in the motion." *Marmolejo*, 2018 WL 1181240 at *4 (citing *Condee*, 88 Cal. App. 4th at 219; Cal. Code Civ. P.

---

[2] "An exception to this general rule exists when the writing does not appear to be a contract and the terms are not called to the attention of the recipient." *Marin Storage & Trucking*, 89 Cal. App. 4th at 1049-50. Here, Plaintiffs have not argued that this exception applies to the employment applications, and so the Court need not analyze this exception.

12

§ 1281.2). Even if Defendants did have a burden to authenticate the applications, Swan's declaration carries that burden for the purposes of the instant motion to compel. *See* ECF No. 26.

With respect to Plaintiffs' arguments about their signatures, the Court notes that Plaintiffs do not deny that they signed the employment applications or accuse Defendants of forging the signatures on the employment applications. Instead, Plaintiffs focus on Defendants' lack of evidence that the signatures are truly Plaintiffs'. The California Court of Appeal addressed similar circumstances in *Marmolejo*. There, where the plaintiff "d[id] not argue the arbitration agreement is a fake or her signature was forged," the California Court of Appeal held that the defendant had carried its burden to prove the existence of a valid agreement even though the plaintiff challenged the authentication of the agreement. 2018 WL 1181240 at *4. In any event, the Court finds that it is clear from comparing the signatures on the employment applications to Plaintiffs' signatures on their declarations filed in the instant case that the employment application signatures are authentic. *Compare* ECF No. 16-1 at 3 *with* ECF No. 24-2 at 9; *compare* ECF No. 16-2 at 3 *with* ECF No. 24-3 at 9.

Finally, Plaintiffs argue that Defendants did not sign the employment applications. Opp'n at 6. Plaintiffs cite no authority for the proposition that both parties must sign an arbitration agreement for it to be binding. To the contrary, "'[m]utual assent may be manifested by written or spoken words, or by conduct,' *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999), and acceptance of contract terms may be implied through action or inaction, *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991)." *Knutson*, 771 F.3d at 565. In the arbitration context, "[w]hile the FAA authorizes the court to enforce only written agreements to arbitration (9 U.S.C. § 3), it does not require the written agreements to be signed." *Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013). Thus, a "writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement." *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 176 (2015).

Plaintiffs state in a footnote that "[n]on-signatory [*sic*] cannot typically compel signatory

13

United States District Court
Northern District of California

to arbitrate claims." Opp'n at 6 n.5. Plaintiffs do not cite any authority for this proposition, and in any event Plaintiffs appear to be distinguishing between a "signatory" to an agreement and a "party" to an agreement in a way that makes little sense. While it may be true that a third party ordinarily has no authority to compel arbitration, *see Norcia*, 845 F.3d at 1290-91, it does not follow that a party to an arbitration agreement could not compel arbitration because that party had not physically signed the agreement but had manifested consent in some other way.

Plaintiffs' remaining objections to the employment applications, such as whether Plaintiffs could have compelled arbitration of disputes brought by Defendants, are more properly considered as unconscionability arguments. *See* Opp'n at 6. Accordingly, the Court thus finds that the arbitration clause in the employment applications created a valid agreement to arbitrate. The Court next addresses whether Plaintiffs consented to the Arbitration Agreement.

### 2. The Arbitration Agreement

Unlike the employment applications, Plaintiffs did not sign the Arbitration Agreement. Thus, the Court must assess whether Plaintiffs manifested consent in some other way. As explained above, "[m]utual assent may be manifested by written or spoken words, or by conduct." *Knutson*, 771 F.3d at 565 (quoting *Binder*, 75 Cal. App. 4th at 850). Under California law, "[a]s a general rule, 'silence or inaction does not constitute acceptance of an offer.'" *Norcia*, 845 F.3d at 1284 (quoting *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1385 (1993)). "There are exceptions to this rule, however. An offeree's silence may be deemed to be consent to a contract when the offeree has a duty to respond to an offer and fails to act in the face of this duty." *Id.* at 1284-85. An opt-out provision presents an example of this type of exception. *See id.* at 1285 (citing *Gentry v. Superior Court*, 42 Cal. 4th 443, 468 (2007), *abrogated on other grounds by Concepcion*, 563 U.S. 333). "An offeree's silence may also be treated as consent to a contract when the party retains the benefit offered." *Id.* However, "[e]ven if there is an applicable exception to the general rule that silence does not constitute acceptance, courts have rejected the argument that an offeree's silence constitutes consent to a contract when the offeree reasonably

Case No. 18-CV-00393-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

did not know that an offer had been made." *Id.* (citing *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972)).

In *Windsor Mills*, the California Court of Appeal explained that "the terms of a contract ordinarily are to be determined by an external, not an internal, standard; the outward manifestation or expression of assent is the controlling factor." 25 Cal. App. 3d at 992. "However, when the offeree does not know that a proposal has been made to him this objective standard does not apply. Hence, an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id.* Thus, where an arbitration clause "was in small print" and "was not conspicuous" and where the "plaintiff was not advised the forms contained such a provision" and the "plaintiff did not have actual knowledge of the provision," the California Court of Appeal held that "there was no agreement by plaintiff to arbitrate, regardless of its outward manifestations of apparent assent as exhibited by its retention of the forms without objection and its initial acceptance of the [good]." *Id.* at 351. Thus, as then-Judge Sotomayor explained for the Second Circuit in a case applying California contract law to a motion to compel arbitration, "California contract law measures assent by an objective standard that takes into account both what the offeree said, wrote, or did and the transactional context in which the offeree verbalized or acted." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002) (Sotomayor, J.).

The Ninth Circuit has applied this principle of California law in several cases in recent years. In *Knutson*, for example, the plaintiff, Knutson, bought a vehicle from Toyota that came with a 90-day trial subscription to Sirius XM satellite radio. 771 F.3d at 562. "When Knutson purchased his vehicle from Toyota, he did not receive any documents from Sirius XM, and he did not know that he was entering into a contractual relationship with Sirius XM by using the service. Instead, he believed that Sirius XM's trial subscription was a complimentary service 'provided for marketing purposes.'" *Id.* at 566. "As far as Knutson was concerned, then, he had not entered into an agreement for service *with Sirius XM* when he purchased the vehicle. He was, as far as he

United States District Court
Northern District of California

knew, only in a contractual relationship with Toyota." *Id.*

Several weeks into the trial period, Sirius XM mailed a "Welcome Kit" to Knutson. The Welcome Kit contained a Sirius XM Customer Agreement, which contained an arbitration provision. *Id.* at 562. The arbitration provision stated that accessing or using Sirius XM's service constituted acceptance of the Customer Agreement. *Id.* "Knutson did not read the Customer Agreement when it arrived in the mail because he did not think 'that any of the documents contained therein were a contract governing the terms of Sirius' service.'" *Id.* at 563. Knutson did not cancel his trial subscription and continued to use the service. *Id.*

Sirius XM later sought to compel arbitration of certain claims that Knutson brought in court. Sirius XM argued that Knutson's continued use of its service after Knutson received the Customer Agreement "constituted his assent to be bound to the Customer Agreement." *Id.* at 566. The Ninth Circuit rejected this argument:

> Nothing in the record, however, indicates that Sirius XM's offer was clearly and effectively communicated to Knutson by mailing him the Customer Agreement. Knutson would only have had notice of his opportunity to cancel his subscription, or the effect of his continued use of the service, if he opened the Welcome Kit from Sirius and read all of the documents therein, which—in view of his lack of awareness of any contractual relationship with Sirius—he had no reason to do. He could not be obligated to act where there was no effective notice that action was required. Accordingly, Knutson's continued use of the service after his receipt of the Customer Agreement did not manifest his assent to the provisions in the Customer Agreement.

*Id.* at 566. In other words, "Knutson could not assent to Sirius XM's arbitration provision because he did not know that he was entering a contract with Sirius XM." *Id.* at 569. Thus, the Ninth Circuit held that Sirius XM "failed to prove by a preponderance of the evidence the existence of an agreement to arbitrate." *Id.*

The Ninth Circuit's decision in *Norcia* is similar. In *Norcia*, the plaintiff bought a Samsung Galaxy S4 phone at a Verizon Wireless Store. 845 F.3d at 1282. The receipt from Verizon Wireless contained an arbitration provision, but the receipt did not reference Samsung or any other party. Norcia signed the Verizon Wireless receipt. *Id.* After Norcia bought the Galaxy

16

S4 phone, a Verizon Wireless employee took the Galaxy S4 phone out of its box and helped

Norcia set up the phone. "Norcia took the phone, the phone charger, and the headphones with him

as he left the store, but he declined the offer by the Verizon Wireless employee to take the box and

the rest of its contents," including a Samsung Product Safety & Warranty booklet that contained

an arbitration agreement. *Id.*

In analyzing whether Norcia consented to the Samsung arbitration agreement, the Ninth

Circuit observed that "[t]here is no dispute that Norcia did not expressly assent to any agreement

in the brochure. Nor did Norcia sign the brochure or otherwise act in a manner that would show

'his intent to use his silence, or failure to opt out, as a means of accepting the arbitration

agreement.'" *Id.* at 1285 (quoting *Gentry*, 42 Cal. 4th at 468). Thus, the Ninth Circuit concluded

that "Samsung's offer to arbitrate all disputes with Norcia 'cannot be turned into an agreement

because the person to whom it is made or sent makes no reply, even though the offer states that

silence will be taken as consent,' unless an exception to this general rule applies." *Id.* at 1286

(quoting *Leslie*, 208 Cal. at 621). The Ninth Circuit held that Samsung had not established that

any exception applied. *Id.*

The Ninth Circuit also analyzed whether the inclusion of the Product Safety & Warranty

booklet in the Galaxy S4's box was sufficient to bind Norcia to the arbitration agreement. *Id.* at

1287-90. The Ninth Circuit characterized *Knutson* as standing for the proposition that "even if a

customer may be bound by an in-the-box contract under certain circumstances, such a contract is

ineffective where the customer does not receive adequate notice of its existence." *Id.* at 1289. In

*Norcia*, the Ninth Circuit determined that "[a] reasonable person in Norcia's position would not be

on notice that the brochure contained a freestanding obligation outside the scope of the warranty.

Nor would a reasonable person understand that receiving the seller's warranty and failing to opt

out of an arbitration provision contained within the warranty constituted assent to a provision

requiring arbitration of all claims against the seller, including claims not involving the warranty."

*Id.* at 1289-90. Accordingly, the Ninth Circuit held that Samsung failed to carry its burden of

United States District Court
Northern District of California

proving the existence of a contract with Norcia to arbitrate as a matter of California law." *Id.* at 1291.

Here, Defendants contend that "Plaintiffs were provided a copy of Davey's employee handbook and arbitration agreement during orientation and again when the handbook was revised in December 2016." Mot. at 2. In support of this contention, Defendants offer Barton's declaration, in which Barton states that when he "conducted new employee orientation, [he] provided new employees copies of various Company policies, including the employee handbook and arbitration agreement. [He] also gave new employees a general overview of the Company's policies and handbook." ECF No. 22 ¶ 3. Swan's declaration makes largely the same point: that new employees receive copies of the Arbitration Agreement during orientation. ECF No. 26 ¶ 6. Defendants argue that Plaintiffs manifested their consent to the Arbitration Agreement by submitting their employment applications, accepting employment, accepting wages, and failing to opt out. Mot. at 4.

Plaintiffs respond that neither Barton nor anyone else ever "discussed employment policies or an arbitration agreement with them, either at orientation or during their employment." Opp'n at 7 (citing ECF No. 24-2 ¶ 7; ECF No. 24-3 ¶ 7). Plaintiffs further state that "they have never even seen the stand-alone arbitration agreement that was submitted as Exhibit 'C' to the Motion." *Id.* (citing ECF No. 24-2 ¶ 7; ECF No. 24-3 ¶ 7). Moreover, Plaintiffs state, based on their observations during their employment, that "other employees also did not receive an explanation of Davey's employment policies or the purported Arbitration Agreement." ECF No. 24-2 ¶ 9; ECF No. 24-3 ¶ 9.

Plaintiffs do not contest, however, that they submitted employment applications, accepted employment, accepted wages, and failed to opt out of the Arbitration Agreement, all of which the Arbitration Agreement defines as manifestations of consent. The Court doubts that submitting an employment application or accepting an offer of employment would be considered manifestations of consent to the Arbitration Agreement, which by Defendants' own admission was not provided

Case No. 18-CV-00393-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

to Plaintiffs until new employee orientation—*after* both the submission of an employment application and the acceptance of an offer of employment had occurred. However, the Court assumes without deciding that either Plaintiffs' acceptance of wages or Plaintiffs' failure to opt out of the Arbitration Agreement would qualify as an exception to the general rule under California law that silence does not constitute consent. *See Norcia*, 845 F.3d at 1284-85 (discussing exceptions, including retention of the benefit offered and failure to act in the face of a duty to respond). Thus, because the Court assumes that Plaintiffs' acceptance of wages or failure to opt out of the Arbitration Agreement would show Plaintiffs' consent to the Arbitration Agreement if they were aware of the Arbitration Agreement, the question becomes whether Plaintiffs were aware of the Arbitration Agreement. *See Knutson*, 771 F.3d at 566 ("[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." (quoting *Windsor Mills*, 25 Cal. App. 3d at 993)).

The Court finds that in the circumstances of this case, Defendants have failed to carry their burden of establishing by a preponderance of the evidence that Plaintiffs consented to the Arbitration Agreement. First, there is a factual dispute as to whether Defendants ever provided Plaintiffs copies of the Arbitration Agreement. Defendants submit two declarations stating that new employees are given the Arbitration Agreement as part of new employee orientation; Plaintiffs submit two declarations saying the opposite. Defendants do not offer any type of documentation to support their contention that Plaintiffs actually received the Arbitration Agreement, such as a signed or initialed acknowledgment that Plaintiffs received any particular policies or agreements or any other kind of personnel record. *See, e.g.*, *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 700 (2013) (employee "received and signed a document entitled 'Acknowledgment of Receipt of Employee Handbook' in which she acknowledged reviewing a copy of the handbook and agreed to abide by the terms and conditions of her employment as stated in the handbook"). Nor do Defendants offer testimony from any

other employee who actually received the Arbitration Agreement, which would support Defendants' assertion that the Arbitration Agreement is routinely distributed at orientation. As such, the evidence about whether Plaintiffs ever received the Arbitration Agreement is evenly balanced.

Similarly, the evidence about whether Defendants mentioned the Arbitration Agreement during new employee orientation is also conflicting. Barton states that he gives new employees an overview of company policies, ECF No. 22 ¶ 3, but does not expressly say that he discusses the Arbitration Agreement. Plaintiffs state that neither Barton nor anyone else discussed the Arbitration Agreement with them. ECF No. 24-2 ¶ 7; ECF No. 24-3 ¶ 7. Thus, the evidence about whether Defendants ever gave Plaintiffs a physical copy of the Arbitration Agreement or discussed the Arbitration Agreement with Plaintiffs is evenly split.

Defendants thus present an even weaker case than *Knutson* or *Norcia*, where the Ninth Circuit found that the plaintiffs were not aware of the existence of the arbitration agreements, because in those cases it was undisputed that the plaintiffs received the arbitration agreements in the mail or in the box of the product, even if the plaintiffs did not notice the agreements or read them. *See Norcia*, 845 F.3d at 1282; *Knutson*, 771 F.3d at 562. Here, by contrast, there is a dispute about whether Plaintiffs even received the Arbitration Agreement. In such circumstances, Defendants have failed to carry their burden of proving by a preponderance of the evidence that Plaintiffs agreed to the Arbitration Agreement because Defendants have not established that Plaintiffs were aware of the Arbitration Agreement. *See Knutson*, 771 F.3d at 569 (holding that defendant failed to prove by a preponderance of the evidence the existence of an agreement to arbitrate where plaintiff was unaware of the arbitration provision contained in a customer agreement he received in the mail). As such, the Court finds that the Arbitration Agreement is not a valid agreement to arbitrate.

In the alternative, even if the Court were to credit Defendants' evidence that Plaintiffs received a copy of the Arbitration Agreement along with other company policies and that Barton

20

verbally gave them a general overview of Defendants' employment policies, the Court would still find that a reasonable person in Plaintiffs' position would not have been aware that the Arbitration Agreement was a contract. Specifically, it is undisputed that Plaintiffs read, speak, and understand only minimal English. ECF No. 24-2 ¶ 2; ECF No. 24-3 ¶ 2. It is also undisputed that most employees who worked with Plaintiffs "have very limited ability to speak or read English" and that the "primary language spoken by most employees during [Plaintiffs'] employment was Spanish." ECF No. 24-2 ¶ 9; ECF No. 24-3 ¶ 9. The Arbitration Agreement that Defendants claim to have given Plaintiffs was only in English. *See* ECF No. 26 ¶ 6; ECF No. 26-3. There is no evidence that a Spanish translation is now or was ever available. In addition, there is no evidence that Barton speaks Spanish, gave any part of his orientation talk in Spanish, or used a Spanish interpreter during the orientation. *See Specht*, 306 F.3d at 30 (observing that "California contract law measures assent by an objective standard that takes into account . . . the transactional context in which the offeree verbalized or acted").

Thus, the Court concludes that even if Defendants did in fact provide copies of the Arbitration Agreement to Plaintiffs, they did so in a way that was insufficient to put Plaintiffs on inquiry notice of the contractual nature of the Arbitration Agreement. *See Knutson*, 771 F.3d at 566 (observing that nothing in the record indicates that Sirius XM's offer "was clearly and effectively communicated to Knutson"). Specifically, Defendants knew that the majority of their employees, at least those based in the Santa Clara office where Plaintiffs worked, primarily spoke Spanish and had limited English abilities. Nevertheless, Defendants only provided the Arbitration Agreement in English. Defendants made no apparent attempt to draw their employees' attention to the fact that the Arbitration Agreement was a contract, either by verbal notification or by requiring their employees to sign the Arbitration Agreement. In these circumstances, a reasonable person in Plaintiffs' position would not be on notice that among a stack of documents in a language she could not read was a contract that waived her right to a jury and committed her to arbitrating all disputes. Nor would such a person understand that simply accepting wages—

something that every employee at every company does—would signal her assent to this agreement, which she did not know existed. *See Knutson*, 771 F.3d at 568 ("a party to a contract cannot be held to the contract's arbitration provision where the plaintiff does not know a contract exists"); *id.* at 569 ("Knutson could not assent to Sirius XM's arbitration provision because he did not know that he was entering into a contract with Sirius XM"). Plaintiffs' failure to opt out is similarly without meaning because they did not know that there was an agreement in the first place. *See id.* at 566 ("He could not be obligated to act where there was no effective notice that action was required."). For these same reasons, a reasonable person in Defendants' place would not have understood Plaintiffs' acceptance of wages as a manifestation of consent to the Arbitration Agreement.

This is so notwithstanding the general contract principle that a party is bound to a contract that she signs even if she does not read or understand it. *See, e.g.*, *Ramos v. Westlake Servs. LLC*, 242 Cal. App. 4th 674, 687 (2015) ("Under the contract principles just discussed, the fact that Ramos signed a contract in a language he may not have completely understood would not bar enforcement of the arbitration agreement."); *Randas v. YMCA of Metropolitan L.A.*, 17 Cal. App. 4th 158, 163 (1993) (rejecting argument that signed release was invalid because the plaintiff could not read the release). This principle is based on the reasoning that if a party knows that she is unable to understand a contract, she has a duty to have it read or explained to her before she signs it. *See Randas*, 17 Cal. App. 4th at 163 (citing 1 Witkin, Summary of Cal. Law (9th ed. 1987) § 120; 3 Corbin, Contracts (1960) § 607). However, this principle does not apply to a situation like the instant case, where Plaintiffs were handed a stack of documents written in English and were not alerted to the contractual nature of any of the documents, either verbally or by being required to sign them. Plaintiffs thus had no specific cause to seek out explanation or translation of any particular document because they did not know that any of the documents were a binding contract or that accepting wages would be construed as assenting to the terms of the contract. *See generally Knutson*, 771 F.3d at 566 (reasoning that Knutson had no reason to open the Welcome

Case No. 18-CV-00393-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

Kit from Sirius XM and read all of the documents inside because Knutson did not know he was in a contractual relationship with Sirius XM); *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 420 (N.D. Cal. 2015) ("It is true that Saravia could have had his copy of the 2010 agreement translated before executing the 2011 agreement, which included similar terms, but nothing alerted Saravia to the fact that any terms deserved a special degree of attention, which would have prompted him to seek a translation.").

The Court stresses that its finding is specific to the facts of this case. The Court does not broadly hold that employers must explain the nuances of each contract to each employee, nor does the Court hold that employers must translate each contract into each of its employees' native languages. Nor does the Court suggest that Defendants had some special obligation to highlight the Arbitration Agreement *because* it was an agreement to arbitrate, as opposed to any other type of contract. *See generally Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 684-88 (holding that state law that required arbitration provision to be typed in underlined capital letters was preempted by § 2 of the FAA). Rather, the Court simply finds that Defendants failed to establish the existence of an agreement to arbitrate in the circumstances here, where Defendants employ primarily Spanish-speaking employees, provided an English-language Arbitration Agreement to those Spanish-speaking employees, and did nothing to alert the employees of the contractual nature of the agreement, where there is a dispute as to whether Plaintiffs even received the Arbitration Agreement, and where Plaintiffs denied actual knowledge of the Arbitration Agreement. As such, the Arbitration Agreement cannot be enforced against Plaintiffs. The motion to compel arbitration is therefore DENIED insofar as it is based on the Arbitration Agreement.

Thus, the only valid agreement to arbitrate was the arbitration clause contained in the employment application. The Court next addresses whether the agreement to arbitrate in the employment application covers the claims in this case.

**B.     Whether the Employment Application Arbitration Clause Covers the Claims in this Lawsuit**

The second threshold inquiry is whether the scope of the arbitration clause in the

23

employment application encompasses the claims at issue in this case. *See Chiron Corp.*, 207 F.3d at 1130. The plain text of the arbitration clause in the employment applications covers "all claims related to my employment." ECF No. 16-1 at 3; ECF No. 16-2 at 3. All of the claims for which Defendants seek to compel arbitration "relate[] to" Plaintiffs' employment, in that they are all wage and hour claims or related claims stemming from Plaintiffs' employment. Plaintiffs do not contest that the arbitration clause in the employment applications covers all of their claims except the PAGA claim. Accordingly, the Court finds that the arbitration clause in the employment applications is an agreement to arbitrate that covers Plaintiffs' first six causes of action.

The Court next addresses Plaintiffs' argument that the arbitration clause in the employment applications is unenforceable because it is unconscionable.

**C.    Whether the Employment Application Arbitration Clause is Unconscionable**

As explained above, the FAA's savings clause "allows courts to refuse to enforce arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Epic Sys.*, 138 S. Ct. at 1622 (quoting 9 U.S.C. § 2). "The clause 'permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* (quoting *Concepcion*, 563 U.S. at 339) (internal quotation marks omitted). Here, Plaintiffs contend that the arbitration clause in the employment applications is unconscionable. *See* Opp'n at 7.

"Under California law, a state court may refuse to enforce a provision of a contract if it finds that the provision was 'unconscionable at the time it was made.'" *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (quoting Cal. Civil Code § 1670.5(a)). "The party asserting that a contractual provision is unconscionable bears the burden of proof." *Id.* (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015)). "[A]n evaluation of unconscionability is highly dependent on context." *Id.* (quoting *Sanchez*, 61 Cal. 4th at 911).

"Unconscionability has 'both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided

results.'" *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910). "Both procedural and substantive unconscionability must be present in order for a clause to be unconscionable, but they need not necessarily be present to the same degree." *Id.* (citing *Armendariz v. Found. Health Psychcare Services*, 24 Cal.4th 83, 114 (2000)). "Rather, there is a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (quoting *Sanchez*, 61 Cal. 4th at 910). The Court addresses procedural and substantive unconscionability in turn.

### 1. Procedural Unconscionability

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Id.* (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 246 (2012)). "Surprise involves the extent to which the terms of the bargain are hidden in a prolix printed form drafted by a party in a superior bargaining position.'" *Serpa*, 215 Cal. App. 4th at 703 (internal quotation marks omitted). "The oppression that creates procedural unconscionability arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Poublon*, 846 F.3d at 1260 (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1347-48, *as modified on denial of reh'g* (Feb. 9, 2015)). "California courts have held that oppression may be established by showing the contract was one of adhesion or by showing from the 'totality of the circumstances surrounding the negotiation and formation of the contract' that it was oppressive." *Id.* (quoting *Grand Prospect Partners*, 232 Cal. App. 4th at 1348); *see also Armendariz*, 24 Cal. 4th at 113 ("Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion.").

### a. Contract of Adhesion

"The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the

opportunity to adhere to the contract or reject it." *Poublon*, 846 F.3d at 1260-61 (quoting

*Armendariz*, 24 Cal. 4th at 113) (alteration in original). "It is well settled that adhesion contracts

in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it

basis, typically contain some aspects of procedural unconscionability." *Serpa*, 215 Cal. App. 4th

at 704. As the California Supreme Court explained in *Armendariz*, "the economic pressure

exerted by employers on all but the most sought-after employees may be particularly acute, for the

arbitration agreement stands between the employee and necessary employment, and few

employees are in a position to refuse a job because of an arbitration requirement." 24 Cal. 4th at

115. Thus, the California Supreme Court has stated that courts "must be particularly attuned to

claims" of substantive unconscionability where there is a contract of adhesion in the employment

context. *See Baltazar*, 62 Cal. 4th at 1245; *Armendariz*, 24 Cal. 4th at 1115. However, the highest

degree of scrutiny is reserved for contracts of adhesion that also show signs of "sharp practices"

such as lying, duress, or other manipulation. *See Baltazar*, 62 Cal. 4th at 1245; *see also Poublon*,

846 F.3d at 1261 ("In the employment context, if an employee must sign a non-negotiable

employment agreement as a condition of employment but there is no other indication of

oppression or surprise, then the agreement will be enforceable unless the degree of substantive

unconscionability is high." (footnote and internal quotation marks omitted)).

   The Court finds that the employment application is a contract of adhesion. First, there was

clearly a significant imbalance in bargaining power between Defendants and Plaintiffs. The

Davey Tree Expert Company is a publicly traded corporation that employs more than 7,000

employees and generates hundreds of millions of dollars in revenue each year,[3] while Plaintiffs are

---

[3] *See* The Davey Tree Expert Company, Form 10-K (March 9, 2016), *available at*
https://www.sec.gov/Archives/edgar/data/277638/000027763816000058/0000277638-16-000058-
index.htm. Plaintiffs cited Defendants' public SEC filings as a source of this information and
Defendants did not object. *See* Opp'n at 8. The Court finds that judicial notice of such publicly
filed documents is appropriate under Federal Rule of Evidence 201. *See Ryan v. Microsoft Corp.*,
147 F. Supp. 3d 868, 873 n.1 (N.D. Cal. 2015) (taking judicial notice of SEC filings); *see also
Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015)
("Under Rule 201, the court can take judicial notice of public records and government documents
available from reliable sources on the Internet, such as websites run by governmental agencies."

Case No. 18-CV-00393-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION AND TO
STAY PROCEEDINGS

United States District Court
Northern District of California

manual laborers. "The arbitration clause was 'imposed and drafted by the party of superior bargaining strength' and 'relegate[d]' to the Plaintiff[s] 'only the opportunity to adhere to the contract or reject it.'" *Cisneros v. Am. General Fin. Servs., Inc.*, No. C 11-2869 CRB, 2012 WL 3025913, at *5 (N.D. Cal. July 24, 2012) (quoting *Armendariz*, 24 Cal. 4th at 113) (first alteration in original). Specifically, Plaintiffs state in their declarations that they were not given the opportunity to negotiate any of the terms in the employment application. ECF No. 24-2 ¶ 4; ECF No. 24-3 ¶ 4.

Defendants respond that the opt-out provision renders the arbitration agreements procedurally conscionable. Reply at 5-6. However, only the Arbitration Agreement contains an opt-out provision, and the Court has determined that Defendants failed to prove that Plaintiffs consented to the Arbitration Agreement. The arbitration clause of the employment application, by contrast, does not contain an opt-out provision. As a result, Defendants' opt-out argument is inapposite. Thus, based on the standardized, take-it-or-leave-it nature of the employment application, the Court finds that the employment application is a contract of adhesion. The Court therefore finds that Plaintiffs have established at least some degree of procedural unconscionability. However, to discern the degree of procedural unconscionability, the Court must also analyze other aspects of the transaction. *See Poublon*, 846 F.3d at 1261.

### b. Other Signs of Procedural Unconscionability: Language Barrier and Limited Time to Review

Plaintiffs advance several others grounds of procedural unconscionability. First, Plaintiffs argue that Defendants gave Plaintiffs the "pre-printed English language job application" to "immediately fill out and sign the application to be considered for hire" even though Plaintiffs spoke only Spanish. Opp'n at 8 (citing ECF No. 24-2 ¶ 4; ECF No. 24-3 ¶ 4). The California Court of Appeal and district courts in California have found that both a language barrier and limited time to review or obtain a translation of a contract contribute to procedural

(internal quotation marks and alterations omitted)).

Case No. 18-CV-00393-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

unconscionability.

Turning first to the issue of language, a district court in the Central District of California recently explained how a language barrier factors into procedural unconscionability analysis, as distinct from contract formation analysis:

> [O]ne cannot disclaim assent to the terms of a contract on the ground that one could not read it. However, the issue is not contract formation; it is whether the manner in which the agreement was negotiated elevates its procedural unconscionability. Although inability to read an agreement does not prevent contract formation, it is still a factor that increases procedural unconscionability when other indications of oppression and surprise are present.

*Perez*, 251 F. Supp. 3d at 1344 (citations omitted). In *Perez*, the district court found an increased level of procedural unconscionability because a contract was provided to the Spanish-speaking plaintiff in English even though the defendant had Spanish translations available, the defendant did not explain any of the terms to the plaintiff, and there was "no indication" that the plaintiff had a "realistic opportunity to obtain a Spanish translation or otherwise ask for an explanation." *Id.* at 1345.

Similarly, in *Penilla v. Westmont Corp.*, 3 Cal. App. 5th 205 (2016), although the defendant "knew many respondents were not proficient in English, [the defendant] never explained the arbitration provision in Spanish or provided a Spanish language copy of it." *Id.* at 216. "The evidence indicate[d] that one-third of respondents were not proficient in English, that [the defendant] w[as] aware of the language difficulties, and that the managers informed respondents in Spanish that they were required to sign the rental agreement but failed to advise them of the arbitration provision or its terms. Additionally, several respondents stated in sworn declarations that they were not provided sufficient time to review the arbitration provision." *Id.* Based on these facts, the California Court of Appeal held that there was procedural unconscionability because a reasonable person would have been surprised by the arbitration provision. *Id.*

Other district courts and the California Court of Appeal have come to similar conclusions.

United States District Court
Northern District of California

*See, e.g.*, *Saravia*, 310 F.R.D. at 420 (finding procedural unconscionability, in part, because the agreements 'were written in English although [the defendant] knew that [the plaintiff's] comprehension of English was limited"); *Villalpando v. Transguard Ins. Co. of Am.*, 17 F. Supp. 3d 969, 985 (N.D. Cal. 2014) (considering as part of unconscionability analysis that "Plaintiff is a manual laborer who was not fluent (or even literate) in English at the time he entered the Agreements"); *Cisneros*, 2012 WL 3025913 at *6 (finding that the plaintiff's inability to understand the contract's terms because they were written in English increases the procedural unconscionability of the contract); *Ortiz v. Roberts Tool Co.*, 2018 WL 328167, at *3-4 (Cal. Ct. App. Jan. 9, 2018) (affirming finding of "a modest degree" of procedural unconscionability where the plaintiff had limited English ability and the contract was a contract of adhesion); *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74 (2014) (finding high degree of procedural unconscionability based on agreement's failure to explain what arbitration means, defendant's failure to explain the arbitration agreement, plaintiff's only having a few minutes to review the agreement, and the fact that only parts of the agreement were translated into Spanish); *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1145-46 (2012) (affirming finding of unconscionability where "plaintiffs perform manual labor, do not speak English as a first language, have limited or no literacy in English, and were told they could not continue employment if they did not sign the agreements" and where one of the plaintiffs was directed to sign the agreement immediately).

In response, Defendants cite *Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW, 2014 WL 5088240 (C.D. Cal. Oct. 7, 2014), a case where a court compelled arbitration notwithstanding the fact that a company provided only an English-language arbitration agreement to a Spanish-speaking employee. Reply at 6. Defendants characterize *Chico* as "reason[ing] that there was no procedural unconscionability because the employee did not claim 'that he ever attempted to ask questions, or that he requested an opportunity to consult with an attorney, take the arbitration agreement home, or obtain a Spanish translation' or that the employer had denied any such

29

requests." *Id.* This is not a completely accurate representation of *Chico*'s analysis. The district court in *Chico* stated that "the Court agrees that if Crestline and RIM did not give Plaintiff an opportunity to ask questions, consult with an attorney, take the arbitration agreements home, or obtain a Spanish translation of the Crestline Arbitration Agreement, it would further support Plaintiff's claim of procedural unconscionability." 2014 WL 5088240 at *9. After noting that the plaintiff in that case had not alleged that he asked to do any of those things, the district court concluded that the defendants' conduct, if true, "would add only a minimal degree of procedural unconscionability." *Id.*

As the cases cited above demonstrate, however, many other courts have found similar circumstances to weigh more heavily toward a finding of procedural unconscionability. *See, e.g.*, *Saravia*, 310 F.R.D. at 420 (finding that even if the plaintiff could have sought to negotiate the terms of an agreement rather than immediately signing it without adversely affecting the plaintiff's employment, "the circumstances of the execution of those agreements were so oppressive that any such opportunity was meaningless"). In addition, in 2015, after *Chico* was decided, the California Supreme Court ruled that "we have never required, as a prerequisite to finding procedural unconscionability, that the complaining party show it tried to negotiate standardized contract provisions," *Sanchez*, 61 Cal. 4th at 914, which undercuts the reasoning in *Chico* somewhat by suggesting that the burden does not completely lie with the employee to demonstrate the futility of any such efforts. Finally, the Court also notes that *Chico* is distinguishable because one of the two arbitration agreements in that case was written in Spanish, which would have significantly lessened the degree of oppression and surprise by putting the plaintiff on notice of the existence of at least one of the arbitration agreements at issue. *Id.*

Here, the Court finds that the employment application's use of an English-language arbitration provision without any translation to Spanish, particularly in an industry and in a location where a large percentage of the workforce is likely to be primarily Spanish-speaking, in circumstances where the applicant has limited time to review the agreement or seek translation,

contributes to the procedural unconscionability of the arbitration clause.

### c. Other Signs of Procedural Unconscionability: Surprise

Plaintiffs in the instant case also make several arguments related to surprise. For example, Plaintiffs contend that "[t]here was no way for Plaintiffs to suspect that, by merely applying for the job, they would be waiving their right to a jury, waiving their appellate rights, or agreeing to mandatory arbitration of their individual claims." Opp'n at 8. Plaintiffs are correct that the arbitration clause in the employment application, unlike many arbitration agreements, does not explain what arbitration is and does not explain that agreeing to arbitration involves giving up the constitutional right to a jury trial. *See* ECF No. 16-1 at 3; ECF No. 16-2 at 3. The arbitration clause provides, in full: "In addition, <u>all claims</u> related to my employment will be resolved through arbitration pursuant to the Federal Arbitration Act and under the rules of the American Arbitration Association." *Id.*

The authority on whether such a failure to explain the consequences of agreeing to arbitration constitutes procedural unconscionability is mixed. In *Mabrie v. Home Improvement King*, 2006 WL 52284, at *5 (Cal. Ct. App. Jan. 11, 2006) (unpublished), the California Court of Appeal held that "the trial court erred in finding the arbitration agreement unconscionable because it does not contain an express waiver of a jury" because "[n]o such legal requirement exists." At least one district court has reached a similar conclusion. *See Borgarding v. JPMorgan Chase Bank*, 2016 WL 8904413, at *4 (C.D. Cal. Oct. 31, 2016) (finding that the assertion that an arbitration agreement is unconscionable because it did not advise the signatory that she was waiving her right to a jury trial was "unpersuasive because it is well-settled that an arbitration agreement does not need to contain an express waiver of the right to a jury trial"). However, just because the law does not require an explicit waiver does not mean that the lack of any notice of the consequences of arbitration cannot be considered in the unconscionability analysis.

Indeed, the California Court of Appeal in at least one case with very similar facts to the instant case held that there was a "strong showing of procedural unconscionability" based in part

31

on the failure to put the plaintiff on notice of the consequences of agreeing to arbitration. *See Wisdom v. AccentCare, Inc.*, 136 Cal. Rptr. 3d 188, 194-95 (2012). In *Wisdom*, the arbitration clause provided that all disputes and claims arising out of the submission of an employment application and any eventual employment "will be submitted to binding arbitration" under the rules of the American Arbitration Association. *Id.* at 192. The California Court of Appeal found "abundant evidence that the arbitration agreement was procedurally unconscionable," including that the contract was one of adhesion, that the American Arbitration Association rules were not attached, and that the "element of surprise was also present." *Id.* at 194. Specifically, the California Court of Appeal explained that "[n]o one called attention to the arbitration agreement, and no one explained that it would result in a waiver of the right to trial. Plaintiffs did not know what binding arbitration meant. Thus, the employees' reasonable expectation that they were entitled to a trial to determine their legal rights with respect to their employment was disappointed." *Id.* However, the California Supreme Court granted review of *Wisdom* on a different issue and thus superseded the California Court of Appeal opinion, but the California Supreme Court never issued an opinion because the case settled. *See Wisdom v. AccentCare, Inc.*, 273 P.3d 513 (Cal. 2012) (granting petition for review); *Wisdom v. AccentCare, Inc.*, 303 P.3d 391 (Cal. 2013) (dismissing review based on settlement); *Jara v. JPMorgan Chase Bank, N.A.*, 2012 WL 3065307, at *3 (July 30, 2012) (stating that the question for which the California Supreme Court granted review in *Wisdom* concerned mutuality, which goes toward substantive unconscionability). The California Court of Appeal's decision thus has only limited persuasive value because it is no longer precedential as a matter of California law. Accordingly, here, the Court finds that the brevity of the arbitration clause and its failure to warn of the consequences of submitting to arbitration only contribute minimally, if at all, to the level of procedural unconscionability.

In addition, Plaintiffs argue that the arbitration clause "was hidden at the end of a nineteen line, ten-point font, barely legible paragraph that also addressed I-9 paperwork, employment

references, criminal background checks, and other information completely unrelated to arbitration of employment claims." Opp'n at 8. Defendants respond that the agreement to arbitrate was "below a heading marked 'IMPORTANT / PLEASE READ BEFORE SIGNING.'" Reply at 5. The Court agrees with Plaintiffs that the arbitration clause itself is inconspicuous. However, the Court cannot conclude that the single paragraph of text in the employment application is the type of "prolix printed form" where the length of the form would support a finding of procedural unconscionability. *See, e.g.*, *Saravia*, 310 F.R.D. at 420 (finding procedural unconscionability where arbitration provisions "lay buried in the middle of more than ten pages of mostly boilerplate language"); *Flinn v. CEVA Logistics U.S., Inc.*, 2014 WL 4215359, at *9 (S.D. Cal. Aug. 25, 2014) (arbitration clause buried in the middle of a 51-page document that was not drawn to reader's attention in any way strongly supported a finding of surprise); *Samaniego*, 205 Cal. App. 4th at 1146 (eleven pages of densely worded, single-spaced text printed in small typeface, where arbitration clause was penultimate of 37 sections, supported a finding of procedural unconscionability). Thus, the inconspicuousness of the arbitration clause does not contribute significantly to the procedural unconscionability of the employment application arbitration clause because the terms of the contract as a whole are relatively short.

Finally, Plaintiffs contend that the job application's failure to identify the applicable American Arbitration Association rules or provide a copy of the rules supports a finding of procedural unconscionability. Plaintiffs cite *Trivedi v. Curexo Technology Corp.*, 189 Cal. App. 4th 387 (2010), for this proposition. Although the Ninth Circuit and other California Court of Appeal decisions have come to similar conclusions, these decisions predate the California Supreme Court's decision in *Baltazar*. *See, e.g.*, *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010); *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 244-45 (2016); *Carmona*, 226 Cal. App. 4th at 84-85; *Samaniego*, 205 Cal. App. 4th at 140.

In *Baltazar*, the California Supreme Court observed that "in *Trivedi* itself and in each of the Court of Appeal decisions cited therein, the plaintiff's unconscionability claim depended in

Case No. 18-CV-00393-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

some manner on the arbitration rules in question." 62 Cal. 4th at 1246. The California Supreme Court explained that "[t]hese cases thus stand for the proposition that courts will more closely scrutinize the substantive unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement." *Id.* Where the plaintiff's unconscionability challenge "has nothing to do with the AAA rules," however, the defendant's "failure to attach the AAA rules therefore does not affect [the Court's] consideration of . . . substantive unconscionability." *Id.* Thus, the California Court of Appeal and the Ninth Circuit in decisions since *Baltazar* have found that "the failure to attach the AAA rules does not make the agreement either procedurally or substantively unconscionable" where the plaintiff "does not identify any aspect of the AAA rules that surprised him or that was unfair or one-sided." *Michaels v. Citigroup, Inc.*, 2017 WL 4675072, at *7 (Cal. Ct. App. Oct. 18, 2017); *see also, e.g.*, *Poublon*, 846 F.3d at 1262 ("incorporation by reference [of the AAA rules], without more, does not affect the finding of procedural unconscionability"). Here, because Plaintiffs do not identify any aspect of the AAA rules that surprised them or that is unfairly one-sided, Defendants' failure to provide a complete copy of the AAA rules does not add to the procedural unconscionability of the employment application.

Considering all of these aspects together, the Court concludes that there was a moderate level of procedural unconscionability in the employment application arbitration clause. For the clause to be unenforceable, however, it must also be substantively unconscionable.

### 2. Substantive Unconscionability

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 246. "Although California courts have characterized 'substantive unconscionability' in various ways, '[a]ll of these formulations point to the central idea that unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party.'" *Tompkins*, 840 F.3d at 1023 (quoting *Sonic-Calabasas A,*

34

*Inc. v. Moreno*, 57 Cal.4th 1109, 1145 (2013) (internal quotation marks omitted)); *see also Sanchez*, 61 Cal. 4th at 911 (reaffirming *Sonic-Calabasas* holding).

Plaintiffs first argue that "the job application imposes a six-month statute of limitations for claims brought by an employee "against Davey" but not for claims brought by Davey against the employee." Opp'n at 10. This argument pertains to the following sentence in the employment application: "Any claims made by me against Davey relating to any aspect of my employment, including but not limited to hiring and termination, must be brought within six (6) months of the occurrence of the event giving rise to the claim(s)." ECF No. 16-1 at 3; ECF No. 16-2 at 3. This term is substantively unconscionable for two reasons. First, the term only limits the time in which employees may bring claims against Defendants; it does not limit the time in which Defendants may bring claims against employees. The Ninth Circuit and the California Court of Appeal have held that non-mutual shortening of limitations periods is substantively unconscionable. *See, e.g.*, *Pokorny*, 601 F.3d at 1001 ("The problem with the contractual reduction in the limitations period in this case, of course, is that it is not mutual."); *La Count v. Patina Restaurant Grp., LLC*, 2015 WL 3814298, at *5 (Cal. Ct. App. June 18, 2015) (finding substantive unconscionability where "the employer may give notice of the intent to arbitrate at any time within the period of time allowed by that statute of limitations," but "the employee has much more burdensome time restrictions"); *see also Flinn*, 2014 WL 4215359 at *9 (finding substantive unconscionability where statute of limitations was effectively shortened to 90 days for one side but not the other).

Second, a six-month limitations period is significantly shorter than the statutory limitations period for the types of wage and hour claims asserted in the instant case, which is three or four years. The California Court of Appeal has recognized that such a significant shortening of the limitations period, especially "in the context of statutory wage and hour claims," is substantively unconscionable because it restricts employees' statutory rights. *Samaniego*, 205 Cal. App. 4th at 1147 (six-month limitations period supported finding of substantive unconscionability); *see Baxter v. Genworth N. Am. Corp.*, 16 Cal. App. 5th 713, 731 (2017) (one-year limitations period for

statutory discrimination claims substantively unconscionable); *Penilla*, 3 Cal. App. 5th at 222

(one-year limitations period, which was "significantly shorter than most of the claims" in the

complaint, supported a finding of substantive unconscionability); *Martinez v. Master Protection*

*Corp.*, 118 Cal. App. 4th 107, 117 (2004) (six-month limitations period supported substantive

unconscionability for discrimination and wage and hour claims). The Ninth Circuit has done the

same. *See Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1076 (9th Cir. 2007) (one-year

limitations period for employment-related statutory claims is substantively unconscionable),

*overruled on other grounds by Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir.

2013). Accordingly, the Court finds that the term that imposes a six-month statute of limitations

only on employees is substantively unconscionable.

Plaintiffs also contend, without elaboration, that "Plaintiffs could not have compelled

arbitration of disputes brought by Davey *against* them." Opp'n at 6. "Mutuality has been

described as the 'paramount' consideration when assessing substantive unconscionability."

*Bradford v. Flagship Facility Servs. Inc.*, 2017 WL 3130072, at *8 (N.D. Cal. July 24, 2017)

(quoting *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638 (2004)). Thus, if the

arbitration clause in the employment application only applied to claims brought by the employee,

such one-sidedness would be substantively unconscionable under California law. However, the

"California Supreme Court has held that broad language reaching 'any dispute' is sufficiently

broad to provide the 'modicum of bilaterality' that is required under California law, as such broad

language reaches suits brought by both employees and employers." *Id.* Specifically, in *Baltazar*,

the California Supreme Court held that an arbitration agreement was mutual where it applied to

"any claim or action arising out of or in any way related to the . . . employment . . . of Employee."

62 Cal. 4th at 1248-49. Here, the arbitration clause in the employment application covers "all

claims related to my employment." ECF No. 16-1 at 3; ECF No. 16-2 at 3. Under *Baltazar*, this

language applies to both employer- and employee-initiated suits, and thus is not substantively

unconscionable.

36

The only other grounds for substantive unconscionability that Plaintiffs advance are the failure to identify which set of AAA rules apply to arbitration and the possibility that Plaintiffs may have to pay a filing fee or other costs associated with arbitration, even if Defendants pay "the fees charged by the arbitrator." Opp'n at 10. Plaintiffs explain that depending on the set of AAA rules that apply, "there may be differences in the type of discovery and whether fees and costs can be shifted to either party, amongst other issues." *Id.* Plaintiffs do not provide enough detail in support of either argument to support a finding of substantive unconscionability on those grounds. With respect to identifying which rules apply, Plaintiffs do not explain what the differences would be between different sets of AAA rules, nor do they actually argue that any set of rules would be substantively unconscionable. With respect to costs, Plaintiffs acknowledge that the employment application states that "Davey will pay the fees charged by the arbitrator." Although it is possible that Plaintiffs may be responsible for a filing fee or other costs, Plaintiffs do not provide any estimate of how much they may have to pay in such filing fees and costs. Pointing to the mere possibility that Plaintiffs may have to pay some unspecified amount in filing fees or costs does not carry Plaintiffs' burden to establish substantive unconscionability.

Accordingly, the Court finds that the arbitration clause in the employment application is substantively unconscionable because it contains a non-mutual shortening of the limitations period for employees' claims to six months.

The Court has thus found that the employment agreement is procedurally and substantively unconscionable. The Court thus may "'(1) refuse to enforce a contract that was 'unconscionable at the time it was made'; (2) 'enforce the remainder of the contract without the unconscionable clause'; or (3) limit the application of any unconscionable clause as to avoid any unconscionable result.'" *Poublon*, 846 F.3d at 1272 (quoting Cal. Civ. Code § 1670.5(a)). "A court may 'refuse to enforce the entire agreement' only when it is 'permeated by unconscionability.'" *Id.* (quoting *Armendariz*, 24 Cal. 4th at 122) (internal quotation marks omitted). As a result, the Court must analyze whether the unconscionable aspects of the employment application arbitration clause can

Case No. 18-CV-00393-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

be severed from the conscionable aspects. *See id.*

### 3. Severability

"Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." *Id.* (quoting Cal. Civ. Code § 1599); *see also Fair v. Bakhtiari*, 195 Cal. App. 4th 1135, 1157 (2011) ("Civil Code section 1599 codifies the common law doctrine of severability of contracts."). "By contrast, a contract is permeated with unlawfulness (and severance is inappropriate) where '[t]he good cannot be separated from the bad, or rather the bad enters into and permeates the whole contract, so that none of it can be said to be good.'" *Id.* (quoting *Keene v. Harling*, 61 Cal. 2d 318, 322 (1964) (alteration in original)). "In other words, '[i]f the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced.'" *Id.* (quoting *Marathon Entm't, Inc. v. Blasi*, 42 Cal. 4th 974, 996 (2008)) (alteration in original). "On the other hand, '[i]f the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.'" *Id.* (quoting *Marathon Entm't*, 42 Cal. 4th at 996). "In each case, the dispositive question is whether 'the central purpose of the contract' is so tainted with illegality that there is no lawful object of the contract to enforce." *Id.* at 1273.

In *Poublon*, the Ninth Circuit held that a provision that allowed one party but not the other to seek judicial resolution of specified claims could "be extirpated without affecting the remainder of the paragraph." *Id.* The Ninth Circuit also held that the non-mutual judicial resolution provision was "collateral to the main purpose of the contract, which [wa]s to require arbitration of disputes." *Id.* (internal quotation marks omitted). Thus, the Ninth Circuit concluded that the arbitration agreement in *Poublon* was "valid and enforceable" once the substantively unconscionable provision was extirpated. *Id.* at 1274.

Here, the only substantively unconscionable aspect of the employment application arbitration clause is the term that imposes a six-month limitations period on employees' claims.

38

This term can be severed "without affecting the remainder of the paragraph." *Id.* at 1273. Moreover, the Court finds that the limitations period term is collateral to the main purpose of the arbitration clause, "which is to require arbitration of disputes." *Id.* As a result, once the limitations period term is removed, the employment application arbitration term is substantively conscionable, and thus enforceable.

The Court thus GRANTS the motion to compel arbitration of the first six claims of the complaint under the terms provided in the arbitration clause of the employment application once the six-month limitations period term is severed from the arbitration clause.[4]

### D.     Whether to Stay the PAGA Claim

Defendants do not seek to compel arbitration of Plaintiffs' PAGA claim. *See* Mot. at 7. Plaintiffs' PAGA claim therefore will be severed from Plaintiffs' other claims and the PAGA claim will remain before this Court. *See Narez v. Macy's W. Stores, Inc.*, No. 16-CV-936-LHK, 2016 WL 4045376, at *5 (N.D. Cal. July 28, 2016).

Pursuant to 9 U.S.C. § 3, the Court must "stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'" *Concepcion*, 563 U.S. at 344 (quoting 9 U.S.C. § 3). If a court "determines that all of the claims raised in the action are subject to arbitration," the court "may either stay the action or dismiss it outright." *Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). "However, if a court finds that the plaintiff asserts both arbitrable and nonarbitrable claims, district courts have 'discretion whether to proceed with the nonarbitrable claims before or after the arbitration and [have] . . . authority to stay proceedings in the interest of saving time and effort for itself and litigants.'" *Jenkins v. Sterling Jewelers, Inc.*, 2018 WL 922386, at *7 (S.D. Cal. Feb. 16, 2018) (quoting *Wilcox v. Ho-Wing Sit*, 586 F. Supp. 561, 567 (N.D. Cal. 1984)); *see also Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) (holding that the defendant "was

---

[4] Although the Arbitration Agreement contained a class action waiver, the employment application did not. Thus, Plaintiffs' class claims are subject to the arbitration compelled by this order.

39

not entitled to a stay pursuant to section 3 of the Arbitration Act" on a nonarbitrable claim, but observing that "sound reasons may exist" to support a stay based on the district court's inherent authority to control its docket).

Here, Defendants ask the Court to stay the PAGA claim pending resolution of the arbitration. Mot. at 7. Plaintiffs oppose the request for a stay. Opp'n at 10-11. The Court, in its discretion, finds that a stay of Plaintiffs' PAGA claim is appropriate based upon the Court's interest, as well as the parties' interests, in saving time and effort. "Plaintiff[s'] PAGA claim[] [is] derivative in nature of [their] substantive claims that will proceed to arbitration, and the outcome of the nonarbitrable PAGA claim[] will depend upon the arbitrator's decision." *Shepardson v. Adecco USA, Inc.*, 2016 WL 1322994, at *6 (N.D. Cal. Apr. 5, 2016); *see also Jenkins*, 2018 WL 922386 at *8 (same). Thus, the Court GRANTS Defendants' request to stay the PAGA claim pending arbitration of the other claims.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to compel arbitration of Claims 1-6 insofar as the motion to compel is based on the employment application arbitration clause, once the six-month limitations period term is excised. The Court DENIES the motion to compel arbitration insofar as it is based on the Arbitration Agreement. The Court GRANTS the motion to stay the PAGA claim pending arbitration of the other claims. The parties shall notify the Court within seven days of the conclusion of the arbitration proceedings.

The Clerk shall administratively close the file. This is an internal administrative procedure that does not affect the rights of the parties.

**IT IS SO ORDERED.**

Dated: July 13, 2018

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

40

United States District Court
Northern District of California