1 | Kevin R. Allen, SBN 237994
**ALLEN ATTORNEY GROUP**
2 | 2121 North California Avenue, Suite 290
Walnut Creek, California 94596
3 | Tel. (925) 695-4913
Fax (925) 334-7477
4 | kevin@allenattorneygroup.com

5 | Daniel A. Menendez, SBN 260822
**LAW OFFICE OF DANIEL A MENENDEZ**
6 | 1261 Lincoln Avenue, Suite 208
San Jose, California 95125
7 | Tel.: (408) 479-4969
Fax: (408) 273-6912
8 | daniel@siliconvalleylegal.com

9 | Attorneys for Plaintiffs
JOSE DIAZ HERMOSILLO
10 | OSCAR DIAZ HERMOSILLO

11 | *Additional Counsel Listed on Following Page*

12 |
13 |                    **IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JOSE DIAZ HERMOSILLO, OSCAR DIAZ HERMOSILLO, on behalf of themselves and all others similarly situated, and on behalf of the general public, | Case No.:  5:18-cv-00393-LHK |
| | (Removed from Santa Clara Superior Court Case No. 17CV320135 pursuant to 28 U.S.C. § 1332(d)(2)) |
| Plaintiffs, | |
| vs. | <u>CLASS ACTION</u> |
| | **JOINT NOTICE OF MOTION AND MOTION TO APPROVE PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| DAVEY TREE SURGERY COMPANY, an Ohio corporation; THE DAVEY TREE EXPERT COMPANY, an Ohio corporation; and DOES 1 through 50, inclusive; | |
| Defendants. | Date: May 6, 2021<br>Time: 1:30 p.m.<br>Courtroom: 8<br>Hon. Lucy H. Koh |
| | Complaint Filed:  December 7, 2017<br>Trial Date:  None Set |

1  Michael E. Brewer, SBN 177912
2  **BAKER & McKENZIE LLP**
   Two Embarcadero Center, 11th Floor
3  San Francisco, California 94111
   Tel.: (415) 576-3000
   Fax: (415) 576-3099
4  Michael.brewer@bakermckenzie.com

5  Attorneys for Defendants
   DAVE TREE SURGERY COMPANY and
6  THE DAVEY TREE SURGERY COMPANY

7  [Remainder of page intentionally blank]

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 6, 2021, at 1:30 p.m., or as soon as the matter can be heard, in Courtroom 8 of the above-entitled Court, located at 280 South 1st Street, San Jose, California 95113, the Honorable Lucy H. Koh presiding, Plaintiffs JOSE DIAZ HERMOSILLO and OSCAR DIAZ HERMOSILLO ("Plaintiffs") and Defendants DAVEY TREE SURGERY COMPANY and THE DAVEY TREE EXPERT COMPANY ("Defendants") jointly move, and hereby do move, for an order and judgment approving their proposed settlement pursuant to The Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq.* ("PAGA") and all of the agreed-upon terms contained therein. This Motion, brought by all parties to this action, seeks approval of: (1) the Private Attorneys General Act (Labor Code § 2698 *et seq.*) Settlement Agreement ("PAGA Settlement") that is attached to the supporting Declaration of Kevin R. Allen as **Exhibit "1"**; (2) the settlement payments to aggrieved employees and the Labor and Workforce Development Agency pursuant to PAGA; and (3) the settlement payments to each of the Plaintiffs for their individual wage and hour claims.[1] This Motion is based upon this Notice of Motion; the Memorandum of Points and Authorities in support filed concurrently herein; the declarations of Kevin R. Allen, Daniel A. Menendez, the named Plaintiffs; and such other documentary and/or oral evidence as may be presented to the Court at hearing.

Respectfully submitted,

Dated: December 21, 2020            **ALLEN ATTORNEY GROUP**

By: <u>//S// Kevin R. Allen</u>
Kevin R. Allen
Attorneys for Plaintiffs

---

[1]     Plaintiffs are filing a separate Motion for Approval of Attorneys and Costs relating to the PAGA Settlement to be heard at the same time as this motion.

JOINT NOTICE OF MOTION AND MOTION TO APPROVE PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Dated: December 21, 2020          **LAW OFFICE OF DANIEL A MENENDEZ**

                                  By:  <u>//S// Daniel A. Menendez</u>
                                       Daniel A. Menendez
                                       Attorneys for Plaintiff

Dated: December 21, 2020          **BAKER & McKENZIE, LLP**


                                  By:  <u>//S// Michael Brewer</u>
                                       Michael Brewer
                                       Attorneys for Defendants


<u>**ECF ATTESTATION**</u>

In accordance with Civil Local Rule 5(i)(3), I Kevin R. Allen, attest that I have obtained concurrence in the filing of this document from the other signatorIes listed here.

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

**I.    INTRODUCTION** ................................................................................................................ 1

**II.   FACTUAL AND PROCEDURAL HISTORY** .............................................................. 2

**A.   THE PARTIES** ................................................................................................................ 2

**B.   FACTUAL SUMMARY** ................................................................................................ 3

**C.   LITIGATION HISTORY** .............................................................................................. 4

**D.   THE SETTLEMENT** ...................................................................................................... 6

1.   Settlement Sum and Allocation. .................................................................................... 7

2.   Notice and Payment Processes. ..................................................................................... 8

3.   Release of Claims ........................................................................................................... 9

**III.  LEGAL ARGUMENT** ...................................................................................................... 10

**A.   PAGA OVERVIEW** ...................................................................................................... 10

**B.   STANDARD FOR PAGA SETTLEMENT APPROVAL** ......................................... 11

1.   Strength of Plaintiffs' Case ......................................................................................... 12

2.   Risk, Expense, Complexity, and Likely Duration of Further Litigation ..................... 14

3.   Amount of Settlement ................................................................................................... 15

4.   Extent of Discovery Completed and State of Proceedings .......................................... 17

5.   Experience and Views of Counsel ............................................................................... 18

6.   "Unjust, Arbitrary and Offensive, or Confiscatory" Evaluation ................................ 19

**C.   REASONABLE FEES AND COSTS SHOULD BE AWARDED** ............................. 20

**IV.  CONCLUSION** ................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Amaral v. Cintas Corp.,* 163 Cal.App.4th 1157 (2008)..................................................... 16

*Arias v. Superior Court*, 46 Cal.4th 969 (2008) ..................................................... 10, 11

*Browning v. Yahoo! Inc.,* U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) ........................... 14

*Cotter v. Lyft, Inc*., 193 F.Supp.3d 1030 (N.D. Cal. 2016)........................................... 17

*Delgado v. Marketsource, Inc.,* 2019 U.S. Dist. LEXIS 146968 (N.D. Cal. Aug 2018)............. 12

*Elliot v. Spherion Pacific Work, LLC,* 572 F.Supp.2d 1169 (C.D. Cal. Aug. 13, 2008) ............. 13

*Fleming v. Covidien, Inc*., 2011 U.S. Dist. LEXIS 154590 (C.D. Cal. Aug. 12, 2011) ............... 19

*Franco v. Ruiz Food Prods., Inc*., 2012 U.S. Dist. LEXIS 169057 (E.D. Cal. Nov. 27, 2012) ... 17

*Garcia v. Gordon Trucking, Inc*., 2012 U.S. Dist. LEXIS 169057 (E.D. Cal. Oct. 31, 2012)..... 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................................... 12

*Jordan v. NCI Group, Inc.*, U.S. Dist. LEXIS 25297 (C.D. Cal. Jan. 5, 2018) ........................... 11

*Lamps Plus, Inc. v. Varela,* 139 S.Ct. 1407 (April 14, 2019) .................................. 5, 14

*McLeod v. Bank of Am., N.A.*, 2018 U.S. Dist. LEXIS 195314 (N.D. Cal. Nov. 14, 2018)......... 17

*Mejia v. Farmland Mutual Ins. Co.,* 2018 U.S. Dist. LEXIS 106856 (E.D. Cal., June 26, 2018) 13

*Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324 (N.D. Cal. Aug. 7, 2014)....................................... 17

*Noori v. Countrywide Payroll & HR Solutions, Inc.*, 43 Cal.App.5th 957 (2019) ................ 13, 14

*Ochoa-Hernandez v. CJADERS Foods, Inc.*, 2010 U.S. Dist. LEXIS 32774

(N.D. Cal. Apr. 2, 2010) ......................................................................... 10

*Patel v. Nike Retail Servs.,* 2019 U.S. Dist. LEXUS 77988 (N.D. Cal. May 8, 2019)................ 12

*Ramirez v. Benito Valley Farms, LLC*, 2017 U.S. Dist. LEXIS 137272

(C.D. Cal. July 22, 2015) ...................................................................... 11

*Rodriguez v. RCO Reforesting, Inc.*, 2019 U.S. Dist. LEXIS 12597

(E.D. Cal. January 25, 2019).................................................................... 12

*Sakkab v. Luxottica Retail N. Am. Inc.,* 803 F.3d 425 (9th Cir. 2015) .................................. 10, 12

*Savea v. YRC Inc.*, 34 Cal.App.5th 173 (2019)........................................................ 13

*Schiller v. David's Bridal, Inc*., 2010 U.S. Dist. LEXIS 81128 (E.D. Cal. July 14, 2010).......... 17

*Smith v. Brinker Int'l, Inc.*, 2010 U.S. Dist. LEXIS 54110 (N.D. Cal. May 5, 2010) .................. 17

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) ............................................ 14

*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112 (2012) .................................... 19

*Viceral v. Mistras Grp., Inc.*, 2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016) ........... 17

*Villalobos v. Calandri Sonrise Farm LP*, 2015 U.S. Dist. LEXIS 186885

    (C.D. Cal. July 22, 2015) .......................................................................................................... 11

*York v. Starbucks Corp.*, 2009 U.S. Dist. LEXIS 131489 (C.D.Cal., Dec. 3, 2009) .................... 13

**<u>Statutes</u>**

28 U.S.C. § 1291 ....................................................................................................................... 6, 15

28 U.S.C. § 1332(d)(2) ................................................................................................................... 4

Cal. Civ. Code § 1542 ................................................................................................................. 6, 9

Cal. Lab. Code § 203 ...................................................................................................................... 9

Cal. Lab. Code § 226 .......................................................................................... 9, 12, 14, 15, 16, 17

Cal. Lab. Code § 226.7 ................................................................................................................... 9

Cal. Lab. Code § 432 ...................................................................................................................... 9

Cal. Lab. Code § 510 ...................................................................................................................... 9

Cal. Lab. Code § 512 ...................................................................................................................... 9

Cal. Lab. Code § 1174 .................................................................................................................... 9

Cal. Lab. Code § 1194 .................................................................................................................... 9

Cal. Lab. Code § 1197 .................................................................................................................... 9

Cal. Lab. Code § 1198 .................................................................................................................... 9

Cal. Lab. Code § 1198.5 ................................................................................................................. 9

Cal. Lab. Code § 1771 .................................................................................................................... 9

Cal. Lab. Code § 1774 .................................................................................................................... 9

Cal. Lab. Code § 2698 ............................................................................................................. 1, 4, 6

Cal. Lab. Code § 2699 ........................................................................................................ 10, 11, 19

Cal. Lab. Code § 2699.3(a)(2). ..................................................................................................... 11

Cal. Lab. Code § 2926 .................................................................................................................... 9

Cal. Lab. Code § 2927 ................................................................................................................ 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Jose Diaz Hermosillo and Oscar Diaz Hermosillo ("Plaintiffs") and Defendants Davey Tree Surgery Company and The Davey Tree Expert Company ("Defendants" or "Davey") have reached a settlement of Plaintiffs' individual claims and claims for penalties under the Private Attorneys General Act, California Labor Code § 2698, *et seq.* ("PAGA"). The Settlement Agreement between the parties is herein attached as **Exhibit "1"** to the Declaration of Kevin R. Allen ("Allen Decl.") filed concurrently herewith.[2]

The Settlement is on behalf of a group of Aggrieved Employees consisting of approximately 2,695 non-exempt Tree Trimmers (including but not limited to those holding the job titles of "laborer," "groundman," "apprentice climber," "climber," "climbing arborist," "climbing arborist trainee," and "trimmer") who were employed by Defendants in the State of California between December 7, 2016 and September 6, 2019, inclusive (referred to as the "Release Period").

If approved, the Settlement would require Davey to fund a Gross Settlement Amount of One Million, Two Hundred Thousand Dollars and Zero Cents ($1,200,000.00), which will be used to pay Plaintiffs' counsel's fees (up to one-third of the fund) and litigation costs ($13,107.28), the costs of the settlement administrator ($6925.00), as well as a $30,000.00 individual settlement payment to each named Plaintiff (for $60,000.00 total).

The amount remaining after making these deductions, $719,967.72, is referred to as the "Net Settlement Amount," and will be distributed as required by PAGA with 75% being paid to the Labor Workforce Development Agency ("LWDA") and the remaining 25% paid to the Aggrieved Employees. The Aggrieved Employees will split this amount *pro rata* based on how many weekly pay periods they worked relative to the total pay periods worked by all Aggrieved Employees during the Release Period.

---

[2]    Unless noted otherwise, all alphanumeric exhibits referenced herein are attached to the Allen Decl.

If approved, Davey will receive a narrow release from the LWDA, Plaintiffs and the Aggrieved Employees, of only those claims for PAGA penalties that were actually alleged in the Plaintiffs' Complaint. In consideration for the individual settlement payments, Davey will also receive a broader general release of all known and unknown claims from each of the named Plaintiffs.

Plaintiffs believe the Settlement, which provides for a substantial benefit to the state of California and Aggrieved Employees, warrants approval. For the reasons explained below, the Parties respectfully request the Court approve the settlement.

## II.    FACTUAL AND PROCEDURAL HISTORY[3]

### A.    THE PARTIES

Defendant The Davey Tree Expert Company was founded in 1880 and incorporated in Ohio in 1909. Defendant Davey Tree Surgery Company is a subsidiary that is also incorporated in Ohio. Together, Defendants provide a wide range of arboricultural, horticultural, environmental and consulting services to customers throughout the United States and Canada. Allen Decl. ¶ 16.

Defendants has historically had a large presence in California. In 2018 alone, Pacific Gas & Electric ("PG&E"),[4] its largest customer, made up approximately 12% of Defendants' total revenue. [PG&E's chapter 11 bankruptcy in 2018 did not impact Davey's cash flow in any significant manner.] Allen Decl. ¶ 17.

The named Plaintiffs (who happen to be brothers) worked for Defendants as non-exempt laborers or climbers out of Defendants' 1055 Commercial Court, San Jose, California location. They were employed from approximately October 2015 to July 2017. At the time their employment ended, plaintiff Jose Diaz Hermosillo was earning $18.50 per hour and plaintiff Oscar Diaz Hermosillo was earning $21.60 per hour. Allen Decl. ¶ 18; *See* attached **Exhibit "2"**

---

[3]    This section reflects facts, allegations, and procedural history from Plaintiffs' perspective. Defendant continues to disavow any wrongdoing and does not concede to any liability.

[4]    *See* Davey, Form 10-K December 31, 2018, https://www.davey.com/media/1943412/2018-december-31.pdf [last visited December 11, 2020).

JOINT NOTICE OF MOTION AND MOTION TO APPROVE PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

[Declaration of Jose Diaz Hermosillo] and **Exhibit "3"** [Declaration of Oscar Diaz Hermosillo] to Declaration of Kevin R. Allen.

**B.      FACTUAL SUMMARY**

The Aggrieved Employees were paid weekly for their previous week's work. Defendants issued wage statements but, prior to December 13, 2018, the wage statements did not include the full legal name of the employer. Instead, most wage statements identified the employer as "Davey." Allen Decl. ¶ 19.

During their employment Plaintiffs allege that they usually worked five shifts a week. A typical shift started at 7:00 a.m. and lasted until at least 3:30 p.m. Plaintiffs report that they were required to be physically present and ready for work at least a few minutes before 7:00 a.m. but were not paid for this time. If they were not present by 7:00 a.m. then they risked having their assignments given to someone else for that day. Defendants deny that they failed to pay Plaintiffs or any other employees for all hours worked. Allen Decl. ¶ 20.

After receiving assignments, a multi-person crew left the Davey's facility and drove a work truck to the customer's location where they were required to provide services that day. Once there, the crew worked together as a team. Depending on the nature of the work, for example, a climber and crew leader physically climbed trees while a groundsman recovered trimmed leaves and branches. Because of the "team" nature of the work, the crew typically took meal and rest breaks at the same time. As a result, Plaintiffs reported that they sometimes worked until 12:00 p.m. before they received their first meal or rest breaks of the day. The team would then receive a combined meal/rest break, typically lasting between thirty minutes and an hour. Davey's timekeeping records only tracked total hours worked per day and not the start/end time of the break period. Plaintiffs report that they were not permitted to climb down from trees for purpose of taking any additional breaks outside of the single combined on-duty break. [Defendants deny Plaintiffs' claims and contend that Aggrieved Employees were permitted to take all of their lawful breaks and meal periods.] Allen Decl. ¶ 21.

The team typically worked to approximately 3:30 p.m. but on occasion could work as late as 5:00 p.m. or even later. Regardless of the length of the shift, Davey's written policy, on its

face, did not provide Tree Trimmers an opportunity to take a second or third rest break, or a second meal period, even when the shift lasted more than ten hours. [Defendants deny Plaintiffs' claims and contend that, in practice, additional breaks and meal periods were offered to employees working extended shifts.] Allen Decl. ¶ 22.

## C.    LITIGATION HISTORY

On December 7, 2017, Plaintiffs filed a class action complaint with the Superior Court of California, County of Santa Clara, alleging the following claims against Defendants: (1) failure to pay wages owed, (2) failure to provide meal and rest periods or pay meal and rest period premiums, (3) failure to pay wages at separation of employment, (4) failure to provide accurate itemized wage statements, (5) failure to produce employment records, (6) unfair business practices, and (7) recovery under the Private Attorneys General Act ("PAGA"). The Complaint was plead as a punitive class action on behalf of a class of non-exempt tree trimmer employees[5] who worked for Defendants in California at any time four years prior to the filing of the Complaint. Allen Decl. ¶ 3.

Plaintiffs alleged a claim for penalties under the The Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq.* ("PAGA"). Allen Decl. ¶ 4. Plaintiffs complied with all pre-filing notice requirements to the LWDA.[6]

On January 18, 2018, Defendants filed for removal of Plaintiffs' complaint to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(d)(2) (2005). Defendants thereafter moved to compel arbitration pursuant to two purported arbitration agreements between the parties and stay the PAGA cause of action. Allen Decl. ¶ 5.

---

[5]     Plaintiffs' Complaint alleged a class consisting of all non-exempt Tree Trimmer employees including but not limited to those holding the job titles of "laborer", "groundsman", "apprentice climber", "climber", "climbing arborist," "climbing arborist trainee", and "trimmer." *See* Complaint at ¶ 29; Allen Decl. ¶ 24.
[6]     Allen Decl. ¶ 4. Plaintiffs filed their PAGA notice with the LWDA on September 13, 2017, providing notice to Defendants and their registered against via Certified Mail on that same date. The LWDA failed to provide Plaintiffs any notice of its intent to investigate Plaintiffs' claims, granting Plaintiffs authorization to proceed under California Labor Code Section 2699.3(a)(2)(A).

Prior to the hearing on the motion to compel, the Parties agreed to attempt an early class mediation. On June 11, 2018 the Parties attended a mediation session with Frances ("Tripper") Ortman, III of Ortman Mediation. Prior to this session, the Parties exchanged extensive data and documents related to the individual, class, and PAGA claims. This information included class metrics on pay records, time records, class lists, job titles, average wage rates, work locations, and other records. The Parties expended considerable resources preparing and analyzing the data prior to mediation. Despite their good faith efforts and an exhaustive in-person mediation involving Plaintiffs, multiple representatives for Defendants, and all of their counsel, the Parties were unable to reach a settlement. Allen Decl. ¶ 6.

On July 13, 2018, this Court issued an Order (ECF Doc. 7) granting in part and denying in part Defendants' motion to compel arbitration and stay the PAGA cause of action. In its Order, the Court ordered the Parties to class-wide arbitration pursuant to one of two agreements within Plaintiffs' job applications. The Court's Order also stayed the PAGA cause of action, which remained in this Court pending the conclusion of the class arbitration, and directed the Clerk to administratively close the file.  Allen Decl. ¶ 7.

On August 10, 2018, Defendants filed a notice of appeal with the United States Court of Appeals for the Ninth Circuit, case number 18-16522, contending the Court erred in interpreting the arbitration agreements and asking the appellate court to reverse the portion of the Court's Order providing for class-wide arbitration. Allen Decl. ¶ 8.

On April 14, 2019 the Ninth Circuit issued an Opinion in *Lamps Plus, Inc. v. Varela,* 139 S. Ct. 1407 (April 14, 2019). In *Lamps Plus*, the Ninth Circuit held that an ambiguous agreement could not, consistent with the FAA, provide the necessary contractual basis for compelling class arbitration. The statute required evidence that the parties actually agreed to arbitrate on a class wide basis.

On September 5, 2019 the Parties attended a second mediation session with Tripper Ortman. This second session was aimed at attempting a resolution of the individual and PAGA claims. Prior to the session, the Parties exchanged additional documents and data needed to

evaluate the individual and PAGA claims for purposes of Settlement. The Parties were unable to resolve the lawsuit at the session. Allen Decl. ¶ 10.

On July 24, 2020, the Ninth Circuit issued a Memorandum dismissing Defendants' appeal for lack of jurisdiction. The ruling did not foreclose Defendants' ability to attack class arbitration as Defendants could appeal that part of the order through appealing a final judgment confirming the arbitration award, under 28 U.S.C. § 1291. This meant that Defendants would still eventually still have the opportunity to ask the Ninth Circuit to reverse class arbitration pursuant to *Valera v. Lamps Plus, Inc.*, 139 S. Ct. 1407.[7] Allen Decl. ¶ 11.

The Parties spent several months continuing to negotiate an individual and PAGA settlement. Finally, on November 2, 2020, the Parties executed the Private Attorneys General Act (Labor Code § 2698 *et seq.*) Settlement Agreement which is the subject of this Motion.

On November 19, 2020, the Parties filed a joint stipulation to lift the July 13, 2019 Stay on this action for purposes of allowing Plaintiffs to file a motion for approval of the individual and PAGA settlement. *See* ECF Doc. No. 47; Allen Decl. ¶ 14.

On November 20, 2020, the Court granted the stipulation and issued an Order lifting the stay. *See* ECF Doc. No. 48;  Allen Decl. ¶ 15.

**D.    THE SETTLEMENT**

The material terms of the proposed settlement set forth in detail in the Parties' Private Attorneys General Act (Labor Code § 2698 *et seq.*) Settlement Agreement which is attached to the Allen Decl. as **Exhibit "1."**

Settlement of Plaintiffs' individual claims is conditioned on Court approval of the PAGA component of the settlement. Settlement §§ 4.03 and 5.02. In addition to the proposed PAGA release, Defendants will receive a full release of claims (including the alleged wage claims and a Cal. Civil Code §1542 release) from Plaintiffs. Settlement § 5.02(a).

---

[7]    On August 17, 2020, the Court issued a Mandate (ECF Doc. 46), entering the July 24, 2020, Memorandum as judgment of this Action. Allen Decl. ¶ 12.

No employee, other than Plaintiffs, will release their rights to pursue any non-PAGA claims against Defendants through this proposed settlement. If approved, Plaintiffs' class action claims will be dismissed without prejudice.

Defendants shall deposit the entire Gross Settlement Amount with the Settlement Administrator within 30 days of Court-approval. Settlement § 3.04(a). The proposed settlement is non-reversionary. Under no circumstances shall any of the Gross Settlement Amount revert to Defendants. *See* Settlement §§ 3.01, 3.04(b).

### 1.    <u>Settlement Sum and Allocation</u>

The Settlement Agreement requires Defendants to fund a Gross Settlement Amount of One Million Two Hundred Thousand Dollars and Zero Cents ($1,200,000.00). The Gross Settlement Amount will be distributed as follows:

1. Individual Settlement Awards of $30,000.00 to each of the Plaintiffs for the release of their individual claims and release under Civil Code Section 1542;

2. Settlement Administration Costs in an amount of $6925.00;

3. Attorneys' fees of up to one-third or $400,000.00 of the Gross Settlement Amount;

4. Reimbursement of litigation costs in the amount of $13,107.28;

The amount remaining after deducting these amounts from the Gross Settlement Amount is referred to as the Net Settlement Amount. Consistent with PAGA, 75% of this will be paid to the California Labor and Workforce Development Agency ("LWDA"). The remaining 25% shall be paid to the approximately 2573 Aggrieved Employees on a pro rata basis, i.e., based on the number pay periods each of them worked relative to the total number of pay periods worked by all Aggrieved Employees during the Release Period of December 7, 2016 to September 6, 2019. Allen Decl. ¶¶ 24-26. If all amounts are approved as applied for, then the average Aggrieved Employee will recover approximately $65.25 in penalties and the LWDA will receive $539,975. Allen Decl. ¶ 53.

In the event Settlement Administration Expenses are less than the agreed maximum, or the Court approves less than the applied for litigation fees/costs, then the amount not approved

shall be added to the Net Settlement Amount to be distributed amongst the LWDA and Aggrieved Employees. Settlement § 3.01(i)-(v). Any funds from uncashed Aggrieved Employee payments shall revert to a Court-approved *cy pres. Id.*

### 2.    Notice and Payment Processes

As required by PAGA, Plaintiffs have submitted the Settlement Agreement to the LWDA at the same time this motion was filed. Allen Decl. ¶¶ 29-31; Settlement § 3.02.

Pursuant to the Settlement, the Aggrieved Employees shall be provided with notice of the Settlement at the same time as they receive their individual settlement checks. Settlement § 3.02(2). The Parties' proposed form of notice is attached to the Allen Decl. as **Exhibit "4."**

The Parties have selected Phoenix Class Action Administrators ("Phoenix") to administer the settlement and notice program. Phoenix is fully qualified to perform these services for which they will charge a flat fee of $6925.00. *See* **Exhibit "5"** [Declaration Of Jodey Lawrence Of Phoenix Class Action Administration Solutions In Support Of Plaintiff's Motion For Approval Of PAGA Settlement] ("Phoenix Decl.") at Exhibit "B".

As many of the Aggrieved Employees speak Spanish, the Parties agreed to have Phoenix translate the notice so it could be sent in both Spanish and English versions. Allen Decl. ¶ 27; *see also* **Exhibit "5"** [Phoenix Decl.] at Exhibit "B".

Within 30 days of Court approval, Defendants shall provide Phoenix Administrators with an Aggrieved Employees List containing the full name, last known address, Social Security Number, and number of pay periods for all Aggrieved Employees. Settlement § 3.03(1). This is also Defendants' deadline to pay the Gross Settlement Amount to the Settlement Administrator. *Id*. § 3.04(a).

Within 15 days of receipt of the Aggrieved Employees List, the Settlement Administrator shall mail the Court-approved notice of PAGA settlement in both Spanish and English and the Aggrieved Employees' settlement awards, via first-class United States mail, to all Aggrieved Employees at their last known address with instructions for the Postmaster to forward all undeliverable Notices to the Settlement Administrator. The Settlement Administrator shall

promptly attempt to locate new addresses for any undeliverable Notices using an address refresher database. Settlement § 3.03(2).

Within 10 days after the PAGA Notice and Aggrieved Employee settlement checks are mailed out, the Settlement Administrator shall pay the attorneys fees and costs, the individual settlement payments to the named Plaintiffs, the LWDA, and pay itself 90% of the Settlement Administration costs. *See* Settlement § 3.04(c)-(e).[8]

Checks sent to the Aggrieved Employees shall remain valid for 180 days. Settlement § 3.04(b). Any uncashed checks shall be voided and the funds from the uncashed checks shall revert to the Court-approved *cy pres*. *Id.* The Parties propose as *cy pres* the Katharine and George Alexander Community Law Center. *Id.*; Allen Decl. ¶¶ 35-36.

### 3.    **Release of Claims**

Once approved, the proposed settlement will release Defendants from liability for PAGA penalties arising during the Release Period,[9] from underlying violations of the statutes plead in the Complaint, i.e., Cal. Lab. Code §§ 203, 226, 226.7, 432, 510, 512, 1174, 1194, 1197, 1198, 1198.5, 1771, 1774, 2926, and 2927. *See* Settlement, § 1.01.

Defendants will also receive a broader release from the named Plaintiffs who, in exchange for $30,000.00 each, have agreed to provide Defendants with a general release of all of their individual claims, known and unknown, as well as a waiver of Cal. Civ. Code § 1542. Settlement § 5.02. This individual settlement amount represents resolution of Plaintiffs' disputed claims for unpaid wages, meal and rest periods, and related penalties (other than PAGA penalties) as well as allegations that they were wrongfully terminated. Receipt of the individual settlement payments is conditioned on Court-approval of the PAGA settlement.

---

[8]    The Settlement Administrator shall pay itself the remaining 10% no sooner than 180-day days after issuing the Aggrieved Employee Settlement Checks. Settlement §3.04(d).

[9]    The Release Period is defined as December 7, 2016 through September 6, 2019, inclusive. Settlement § 1.01(i).

JOINT NOTICE OF MOTION AND MOTION TO APPROVE PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# III.  LEGAL ARGUMENT

## A.  PAGA OVERVIEW

The California Legislature enacted the Private Attorneys General Act to allow aggrieved employees, on behalf of California's Labor and Workforce Development Agency and other aggrieved employees, to bring suit against their employers for violations of California's labor laws and to obtain penalties previously only collectable by the State. California enacted the PAGA after determining it was "in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations" since the state was unable to adequately enforce its labor laws. *Arias v. Superior Court*, 46 Cal.4th 969, 980 (2008); *Ochoa-Hernandez v. CJADERS Foods, Inc.*, No. 08-2073, 2010 U.S. Dist. LEXIS 1340777, at 12 (N.D. Cal. April 2, 2010) ("The act's declared purpose is to supplement enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves. Unlike class actions, these civil penalties are not meant to compensate unnamed employees because the action is fundamentally a law enforcement action." [citations omitted]).

"An employee bringing a PAGA action does so as a proxy or agent of the state's labor law enforcement agencies, […] who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.,* 803 F.3d 425, 435 (9th Cir. 2015); *see also Arias v. Superior Court*, 46 Cal.4th 969, 986 (2009).

Labor Code section 2699(a)[10] states any Labor Code provision "that provides for a civil penalty to be assessed and collected by the [LWDA] may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3." An "aggrieved employee" is "any person who was employed by the alleged violator and against whom one or more of the alleged violation was committed." Lab. Code § 2699(c).

Civil penalties recovered under PAGA are split between the LWDA and aggrieved employees, with 75% going to the LWDA and 25% going to aggrieved employees for collecting penalties on behalf of the State. Lab. Code § 2699(i).

---

[10]   All references to the "Labor Code" herein reference the California Labor Code unless otherwise specified.

JOINT NOTICE OF MOTION AND MOTION TO APPROVE PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Prior to commencing a civil action, the aggrieved employee must provide notice to the LWDA and the employer setting forth the "specific provisions of [the Labor Code] alleged to have been violated, including the facts and theories to support the alleged violation." Lab. Code § 2699.3(a)(1). The aggrieved employee is free to commence a civil action on behalf of the State if the LWDA fails to provide a notice of its intent to investigate the aggrieved employee's claims within 65 days. Lab. Code §2699.3(a)(2).

Settlement of a PAGA action requires Court approval, with notice of the proposed settlement submitted to the LWDA at the same time as submission for Court approval. Lab. Code § 2699(l)(2).

## B.    STANDARD FOR PAGA SETTLEMENT APPROVAL

California Labor Code section 2699(l)(2) provides "the superior court shall review and approve any settlement of any civil action pursuant to this part." PAGA settlements are not obligated to "satisfy class action requirements" for settlement, including standards for class action settlement approval. *Arias v. Superior Court*, 46 Cal.4th 969, 980-988 (2009). "[T]here is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23[.]" *Villalobos v. Calandri Sonrise Farm LP*, 2015 U.S. Dist. LEXIS 186885, at *14 (C.D. Cal. July 22, 2015). The LWDA itself has stated "[t]he LWDA is not aware of any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery of other claims in the action." *Ramirez v. Benito Valley Farms, LLC*, 2017 U.S. Dist. LEXIS 137272, at *8 (C.D. Cal. July 22, 2015). "[N]either the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has provided any definitive answer as to what the appropriate standard is for approval of a PAGA settlement." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F.Supp.3d 959, 971 (N.D. Cal. 2019) (quoting *Jordan v. NCI Group, Inc.*, U.S. Dist. LEXIS 25297, at *5 (C.D. Cal. January 5, 2018)).

Several courts, including this Court, have applied several of the factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) in the evaluation of PAGA settlements. *See Rodriguez v. RCO Reforesting, Inc.*, 2019 U.S. Dist. LEXIS 12597, at *11 (E.D. Cal. January 25,

2019); *See also Patel v. Nike Retail Servs.,* 2019 U.S. Dist. LEXUS 77988, at *5-6 (N.D. Cal. May 8, 2019).

The *Hanlon* factors used to evaluate class action settlements include: (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status through trial; (4) amount offered in settlement; (5) extent of discovery completed; (6) expertise and views of counsel; (7) presence of government participation; and (8) reaction of class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026. Three of these factors; risk of maintaining class action status, presence of government participation, and reaction of class members; are irrelevant to PAGA actions since they are not class actions where the LWDA is not involved. This Court has instead evaluated PAGA settlements in light of the remaining five (5) *Hanlon* factors, and requirement the award not be "unjust, arbitrary and offensive, or confiscatory" as dictated by Labor Code section 2699(e)(2). *See Delgado v. Marketsource, Inc.,* Dkt. No. 84, 2019 U.S. Dist. LEXIS 146968, at *10-11. "Because state law enforcement agencies are the 'real parties in interest' for PAGA claims, the Court's task in reviewing the settlement is to ensure that the state's interest in enforcing the law is upheld. *Delgado v. Marketsource, Inc.*, 2019 U.S. Dist. LEXIS 146968, at *8-9 (citing *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, at 435 (S.D. Cal. June 3, 2015).

Plaintiffs' counsel believes that these factors, taken as a whole, support approval of the proposed PAGA Settlement and that it upholds the "state's interest in enforcing the law." *See* Allen Decl. ¶¶ 46-52.

## 1.    Strength of Plaintiffs' Case

Plaintiffs' counsel considered their strongest claim for PAGA penalties to be the alleged inaccurate wage statements in violation of Labor Code Section 226. Allen Decl. ¶¶ 48-49. This claim was premised on employment records and written policies, as opposed to evidence of alleged practices that could have varied depending on each Aggrieved Employee's supervisor as well as the location and time period in which they worked. *Id.*

Plaintiffs' counsel recognizes the existence of significant legal and factual battles that could have prevented Aggrieved Employees from obtaining a full (or perhaps any) recovery on this claim. For example, Defendants have argued that the use of "Davey" on the wage statements did not violate Labor Code Section 226. There is caselaw supporting this position. For example, in *Noori v. Countrywide Payroll & HR Solutions, Inc.*, 43 Cal.App.5th 957 (2019) the court discussed Section 226's name requirement:

> Section 226 does not expressly require that the name registered with the California Secretary of State be included on the wage statement. (*Mejia v. Farmland Mutual Ins. Co.* (E.D.Cal., June 26, 2018, No. 2:17-CV-00570-TLN-KJN) 2018 WL 3198006, p. *5 (*Mejia*).) Nor must the company's complete name be included.... Instead, section 226, subdivision (a)(8) only requires the employer to state "the name and address of the legal entity that is the employer." (*See Elliot v. Spherion Pacific Work, LLC* (C.D.Cal. 2008) 572 F.Supp.2d 1169, 1180 (*Elliot*).) It does not expressly require that the employer state its complete or registered name. (*Id.* at p. 1179.) "If the legislature had [***8] intended to require an employer to show its complete [or registered] name on wage statements, it would have stated so ... ." (*Ibid.*) "[T]he specificity required in the remainder of section 226(a)—requiring, for example, various subcategories of information relating to pay rates, hours worked, and deductions—demonstrates that, when the [L]egislature drafted this statute, it well knew how to require highly detailed information on wage statements." (*Id.* at pp. 1179–1180.)
>
> Further, as both parties note, minor truncations of an employer's name have been found to comply with the statute. (*See Elliot, supra*, 572 F.Supp.2d at p. 1179 [referring to "Spherion Pacific Work, LLC" instead of "Spherion Pacific Workforce, LLC" did not violate statute (italics added)]; *Mejia, supra*, 2018 WL 3198006 at p. *5 [referring to "Farmland Mutual Insurance Co." rather than the registered name "Farmland Mutual Insurance Company" did not violate statute (italics added)].) [*965]
>
> Similarly, fictitious business names can satisfy the statute. (*See Savea v. YRC Inc.* (2019) 34 Cal.App.5th 173, 179 [246 Cal. Rptr. 3d 56] [using California registered fictitious business name "YRC Freight" instead of the legal corporate name "YRC Inc." [**108] did not violate statute]; *York v. Starbucks Corp.* (C.D.Cal., Dec. 3, 2009, No. CV 08-07919 GAF (PJWx)) 2009 WL 8617536, p. *8 [using "Starbucks Coffee Company" a fictitious business name of "Starbuck Corporation," [***9] rather than the official corporate name satisfied § 226, subd. (a)(8) as a matter of law].)

*Noori,* 43 Cal.App.5th at 964-965 (*emphasis* and citations original).

Although Plaintiffs believe that the current state of the law supports its wage statement claim there is also a possibility that changes to the law or future appellate court cases undermine this claim. Allen Decl. ¶ 47.

Courts have noted legal uncertainty favors approval of a settlement. *See Browning v. Yahoo! Inc.* U.S. Dist. LEXIS 86266, at *30 (N.D. Cal. November 16, 2007) ("[L]egal uncertainties at the time of settlement –particularly those which go to fundamental legal issues – favor approval."). Defendants have and continue to deny liability with regard to any of Defendants' individual and PAGA claims.

### 2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

This factor also favors approval of the PAGA Settlement.

As matters stand, the part of this Court's July 13, 2018 Order compelling class arbitration is arguably contrary to the United States Supreme Court's opinion, almost on year later, in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (April 14, 2019).

The arbitration agreement in *Lamps Plus* was silent as to class arbitration but contained some language that could be interpreted broadly enough to evidence an agreement to arbitrate class claims. *Id.* at 1413 ("…such as one stating that 'arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings relating to my employment.'"). The Ninth Circuit followed California law and construed "the ambiguity against the drafter," noting that the rule of Contract construction "applies with peculiar force in the case of a contract of adhesion." *Id.*

The United States Supreme Court disagreed. Relying on *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), the Supreme Court held that "Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis. The doctrine of *contra proferentem* cannot substitute for the requisite affirmative 'contractual basis for concluding that the part[ies] agreed to [class arbitration].' " *Lamps Plus, Inc.*, 139 S. Ct. at 1419 (citing *Stolt-Nielsen S. A.,* 559 U.S. at 684).

In the present matter, Davey presented the Court with two different arbitration agreements which contained somewhat different terms and language regarding the scope of the

arbitration agreement. Allen Decl. ¶ 7. Neither contained an explicit agreement to arbitrate class claims and one of the agreements included a class waiver. *Id.* While it is not explicitly stated in this Court's 2018 Order, it would appear that the Court may have been relying on contract formation principles when interpreting the arbitration agreement(s) and compelling class arbitration. *Id.*

Defendants' appeal of the Court July 13, 2018 Order was dismissed due to lack of jurisdiction. However, Defendants will still be able to appeal that Order but, as things stand, will need to wait for the conclusion of the arbitration and seek to appeal the final judgment confirming the arbitration award. *See* 28 U.S.C. § 1291; Allen Decl. ¶ 47. This process could take several years, hundreds of hours of work, and tens of thousands of dollars in costs to litigate the arbitration through judgement. *Id.* The risk of having that judgment overturned on appeal, after so much work and time being invested, further supports approval of the PAGA Settlement. *Id.*

### 3. <u>Amount of Settlement</u>

The amount of the Settlement supports approval.

Defendants will pay One Million Two Hundred Thousand Dollars and Zero Cents ($1,200,000.00) to a Gross Settlement Fund, of which at least $719,967.72 will be paid out as PAGA penalties (25% to Aggrieved Employees and the remaining 75% to the LWDA).

Settlement administration costs are fixed at $6925.00. *See* **Exhibit "5"** ["Phoenix Dec."] at Ex. "B". Plaintiffs' counsel solicited several bids (with one as high as $12,000.00) before engaging Phoenix Settlement Administrators to perform this work. Allen Decl. ¶ 33. These costs will cover the cost of a Court-approved notice to aggrieved employees (in Spanish and English) and administration of settlement payments to those aggrieved employees. *Id.* ¶¶ 32-33.

Plaintiffs have submitted the proposed settlement with the LWDA. Allen Decl. ¶ 30. To the extent the LWDA believes it undervalues the claims, then they will have an opportunity to object to, or oppose approval of, the proposed PAGA Settlement.

Plaintiffs' counsel believes that the amount of the proposed Settlement supports approval.

1    Under PAGA, employees are eligible to recover $100.00 for an initial violation and

2    $200.00 for subsequent violations. Lab. Code § 2699(f)(2).

3    The principal alleged violation in this lawsuit relates to Defendants' failure to issue wage

4    statements that identified the correct legal entity that employed the Tree Trimmers, in violation

5    of Labor Code Section 226. Allen Decl. ¶ 48. There is no known evidence that, prior to this

6    lawsuit, Davey had been sued previously for not identifying the proper legal entity on

7    employees' wage statements. *Id.* Accordingly, the initial violation penalty of $100 was most

8    likely to apply. *See Amaral v. Cintas Corp.* 163 Cal.App.4th 1157, 1209 (2008) [holding that a

9    subsequent violation does not trigger until "the employer has learned that its conduct violates the

10   Labor Code."]. Plaintiffs' counsel estimates that this claim could have given rise to almost $13.4

11   million in PAGA penalties at the initial $100 per pay period penalty amount.[11] This means the

12   proposed PAGA Settlement of $1.2 million equals almost 9% of Plaintiffs' valuation of the

13   strongest PAGA claim arising from Defendants' wage statements.

14   Plaintiffs had several other claims that could have resulted in PAGA penalties. Allen

15   Decl. ¶¶ 50-51. Of these, Plaintiffs' counsel believes that the alleged failure to provide second

16   meal periods was the strongest claim and the most likely to result in any significant additional

17   penalties being assessed against Defendants. *Id.*

18   Defendants contend that Plaintiffs cannot recover multiple penalties for the same

19   employee during a single pay period, referred to as a "stacking." There is some case authority

20   allowing for stacking but nothing binding.[12] If stacking is allowed, then Plaintiffs' counsel

21   estimates that it could have potentially recovered an additional $4.6 million in PAGA penalties

22

23   [11]    Allen Decl. ¶ 49. Defendant provided updated metrics about the Aggrieved Employees

24   just prior to this Motion being filed. *Id.* Those records reflect that the employees worked almost
     133,917 weekly pay periods between December 7, 2016 and December 13, 2018. *Id.* At $100

25   violation per pay period, this would give rise to approximately $13,391,700 in PAGA penalties
     for inaccurate wage statements. *Id.*

26   [12]    *See* e.g. *Schiller v. David's Bridal, Inc.*, 2010 U.S. Dist. LEXIS 81128 at *17 (E.D. Cal.

27   July 14, 2010) (in order denying motion for remand, court observed "Plaintiff cites no authority
     establishing that PAGA penalties could not be awarded for every cause of action under which

28   they are alleged"); *Smith v. Brinker Int'l, Inc.*, 2010 U.S. Dist. LEXIS 54110 at **12-14 (N.D.
     Cal. May 5, 2010) (stacking PAGA penalties when calculating amount in controversy).

on the failure to provide second meal periods. The proposed PAGA penalties would still equal 6.7% of the exposure on the wage statement and second meal period claims.[13]

Accordingly, the proposed settlement does not give rise to concerns that the amount of settlement is grossly lower than the total value of the claim. These concerns are typically reserved for actions where the proposed settlement is 1% or even less than the total valuation.[14] Courts, nonetheless, have approved PAGA recoveries in such ranges. See *McLeod v. Bank of Am., N.A.*, *2018 U.S. Dist. LEXIS 195314*, at * 4 (N.D. Cal. November 14, 2018) (approving PAGA settlement totaling 1.1% of total value).

### 4.    Extent of Discovery Completed and State of Proceedings

Th extent of discovery and state of the proceeds support approval.

Despite having formal discovery stayed as a result of Defendants' motion to compel arbitration, and its subsequent appeal, and the current stay on the PAGA cause of action, the Parties have had ample opportunity to conduct an exhaustive informal exchange of information as part of their multiple mediation sessions. *See* Allen Decl. ¶¶ 6, 10. Plaintiffs' counsel received a class list identifying the Aggrieved Employees, their job title, rate of pay and the start and end dates of employment with Defendants. *Id.* Plaintiffs also received copies of employee

---

[13]    Allen Decl. ¶50.
[14]    Courts have been known to approve even lower allocations to PAGA claims when they are being settled as part of a Rule 23 wage and hour class action. *See, e.g.* V*iceral v. Mistras Grp., Inc.*, 2016 U.S. Dist. LEXIS 140759, at * 34 (N.D. Cal. Oct. 11, 2016) (preliminarily approving class action settlement that included a PAGA set-aside of just 0.15 percent of the PAGA claim's full potential value, where "Plaintiffs face[d] a substantial risk of recovering nothing on either the class or PAGA claims"); *Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030, 1037 (N.D. Cal. 2016) (preliminarily approving class action settlement allocating a PAGA set-aside worth a fraction of the PAGA claim's potential value, where the defendant's obligations were "genuinely unclear" and there was no evidence the defendant acted deliberately or negligently failed to learn about its obligations); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1330 (N.D. Cal. 2014) (preliminarily approving $10,000 in PAGA penalties out of a total settlement amount of $1,250,000); *Franco v. Ruiz Food Prods., Inc.*, 2012 U.S. Dist. LEXIS 169057, at ** 41-42 (E.D. Cal. Nov. 27, 2012) (granting final approval of $10,000 in PAGA penalties out of a total settlement amount of $2,500,000); *Garcia v. Gordon Trucking, Inc.*, 2012 U.S. Dist. LEXIS 169057, at **36-37 (E.D. Cal. Oct. 31, 2012) (granting final approval of $10,000 in PAGA penalties out of a total settlement amount of $3,700,000).

handbooks, new hire orientation materials, job descriptions, as well as each of the Plaintiffs' personnel file. *Id.* This exchanged information provides all Parties with a developed sense of the risks and benefits of continued litigation of this case.

Likewise, the state of the proceedings supports approval. The proposed PAGA Settlement will allow the Parties the opportunity to resolve the PAGA claims now. If there were no PAGA Settlement, then the PAGA claims would necessarily have to wait several years before being litigated. The Parties would need to finish the class arbitration, submit the arbitration award for confirmation by the Court and issuance of a judgment, and brief any appeals thereof. Assuming Defendants were successful on appeal, then Plaintiffs could be required to go back and arbitrate their individual claims before being permitted to return to this Court to pursue the PAGA claims.

## 5.   **Experience and Views of Counsel**

Competent and experienced counsel in favor of settlement represent the Parties in this case. Defendants' counsel has extensive experience in wage actions, including the PAGA action at issue. Plaintiffs' counsel spans two law firms with a combined 25 years of experience in employment law. Plaintiffs' counsel is experienced in class and representative actions, class certification, and the risks that come with extensive litigation typically spanning many years. Plaintiffs' attorneys favor settlement due to legitimate questions regarding whether they would ultimately prevail on a class-wide or representative basis and unresolved issues regarding several claims. Defendants' counsel favors settlement as it will bring finality to this extensive litigation in a prompt manner.

As discussed above, all relevant factors favor approval of the proposed settlement. The proposed settlement as to Plaintiffs' individual and PAGA claims for a total of $1,200,000.00 was only reached after multiple mediations, extensive information exchange, and considerable motion and appellate practice. The fact that the LWDA will receive over half a million dollars in PAGA penalties under the Settlement is a significant benefit and supports approval of the Settlement.

### 6.    "Unjust, Arbitrary and Offensive, or Confiscatory" Evaluation

Labor Code section 2699(e)(2) provides that "a court may award a lesser amount than the maximum penalty amount provided [under PAGA] if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." In *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112 (2012) the Court of Appeal affirmed the trial court's reduction of PAGA civil penalties by 30 percent, finding that awarding the full penalties would have been "unjust" because "the evidence showed…defendants took their obligations…seriously and attempted to comply with the law," and that the defendants' financial condition "rendered them unable to pay penalties from ongoing revenues." *Id.* at 1136. Similarly, in *Fleming v. Covidien, Inc.*, No. ED CV10-01487 RGK (OPx), 2011 U.S. Dist. LEXIS 154590, at * 4 (C.D. Cal. Aug. 12, 2011), the court reduced PAGA civil penalties for wage statement violations from $2,800,000 to $500,000, because "the aggrieved employees suffered no injury" as a result of the violations, the defendants "were not aware" their wage statements violated the law, and the defendants "took prompt steps to correct all violations once notified."

This evaluation weighs in favor of approval of settlement.

While Defendants' total exposure is several magnitudes more than the settlement amount, there is a very real risk that, even if Plaintiffs prevailed, the Court could award a lesser amount than the maximum penalties available under PAGA. This is particularly true in this case where the primary violation arises from Defendants' alleged failure to identify the proper legal entity on the Aggrieved Employees wage statements for a two-year period (i.e., December 7, 2016 through December 13, 2018). The exposure on this claim is magnified by the fact that Defendants had weekly pay periods instead of the more typical twice a month or biweekly pay periods favored by most employers.

Davey believes there was a strong chance that the Court would have reduced the penalties believing this technical violation was disproportionate to the penalties being sought. Afterall, even though the wage statements did not describe the full legal name of the entity employer, most identified "Davey" generally and also included a proper address for the main Davey entity.

The fact that Davey also had weekly pay periods also doubled its exposure for the same culpable act. The Court may have had sympathy for the employer and reduced the penalty claim accordingly.

The remaining claims for penalties arise mostly from allegations of meal period and rest break violations or that Davey did not compensate Plaintiffs for very small amounts of time due to time rounding and the (alleged) requirement that some employees show up a few minutes before their shift so they were ready to work at precisely 7:00 a.m. While prevailing on these claims would have increased the recovery, there was a real possibility that the Court would have reduced these penalties as well so as to avoid an "unjust, arbitrary and oppressive, or confiscatory" result.

The Settlement eliminates these risks through securing a sizable and immediate payment for the benefit of the Plaintiffs, Aggrieved Employees, and the LWDA.

## C.    REASONABLE FEES AND COSTS SHOULD BE AWARDED

The Settlement provides that Plaintiffs' counsel may apply for an attorneys' fees award of up to one third of the Gross Settlement Amount (i.e., $400,000.00) as well as litigation costs of up to $15,000. Settlement § 3.01 (i)-(ii). Plaintiffs are filing a separate Motion to Approve Attorneys' Fees and Costs to be heard at the same time as this Motion. As set forth in the Settlement, Defendant does not oppose or object to Plaintiffs' application for fees and costs within the parameters set forth in the Settlement.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Parties jointly move this Court to grant the instant Motion to approve the proposed settlement.

///

///

///

1

Respectfully submitted,

2

3    Dated: December 21, 2020          **ALLEN ATTORNEY GROUP**

4                                      By: //S// Kevin R. Allen

5                                          Kevin R. Allen
                                           Attorneys for Plaintiffs
6

7    Dated: December 21, 2020          **LAW OFFICE OF DANIEL A MENENDEZ**

8

9                                      By: //S// Daniel A. Menendez

10                                         Daniel A. Menendez
                                           Attorneys for Plaintiff
11   Dated: December 21, 2020          **BAKER & McKENZIE, LLP**

12

13                                     By: //S// Michael Brewer

14                                         Michael Brewer
                                           Attorneys for Defendants
15

16                     **ECF ATTESTATION**

     In accordance with Civil Local Rule 5(i)(3), I Kevin R. Allen, attest that I have obtained
17   concurrence in the filing of this document from the other signatories listed here.

18

19

20

21

22

23

24

25

26

27

28

JOINT NOTICE OF MOTION AND MOTION TO APPROVE PAGA SETTLEMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF